LUCY M. ESTABROOK

DEPENDENT WIDOW OF WILLIAM J. ESTABROOK

*vs.*

STEWARD READ COMPANY AND AETNA LIFE INSURANCE COMPANY.

Kennebec.      Opinion June 24, 1930.

*Arthur L. Thayer*, for petitioner.
*William B. Mahoney*,
*Charles J. McGraw*, for appellants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ. PHILBROOK, A. R. J.

FARRINGTON, J.   The case comes up on appeal from a decree of a Justice of the Superior Court on a decision of the Industrial Accident Commission.

The essential facts are as follows: William J. Estabrook in the course of his employment as a roofer for Steward Read Company received personal injury resulting from a thirty-five foot fall. The

accident occurred on October 14, 1924. On November 4, 1924, an agreement as to compensation, duly approved, was entered into between the injured employee, the employer and the insurance carrier providing for the payment of $16.00 per week "during present disability" beginning October 21, 1924, the nature of the injury and disability being described as "severe shock as result of a fall. Bruises to body." Compensation under this agreement was paid to October 14, 1928, when William J. Estabrook died.

On December 1, 1928, Lucy M. Estabrook filed with the Industrial Accident Commission a petition for the award of compensation to herself as dependent widow. On March 20, 1929, a hearing was held on this petition before the Chairman of the Commission, and on May 28, 1929, a decree was filed denying compensation, the Chairman finding that death was not caused by the injury but that the deceased died of heart failure due to aneurism. No appeal from the decree was prosecuted.

On June 18, 1929, the widow filed with the Commission a petition to determine the extent of permanent impairment and for the award of compensation on that basis, alleging that the injuries received by William J. Estabrook on October 14, 1924, resulted in permanent impairment to the usefulness of both legs.

On August 30, 1929, a hearing was had with further hearing on December 6, 1929. On December 20, 1929, a decree was filed by the Commission signed by the Chairman, and Commissioner of Labor, in which it was found "that the percentage of permanent impairment to each leg is 95%. It is also found that such impairment is attributable to the injury itself, at least by way of acceleration or aggravation of a preëxisting condition, rather than as contended by respondents to a systemic condition inferable from the aneurism of the aorta which precipitated his death."

The employer, or the insurance carrier was ordered to pay "to Lucy M. Estabrook, dependent widow aforesaid, compensation for presumed total incapacity beginning October 21, 1924, on account of said permanent impairment for the specific period of 285 weeks, less the number of weeks, — according to the Commission records, 211 weeks — during which compensation was paid to employee before his death and to petitioner thereafter."

The Commissioner of Insurance dissented on the ground that there was "failure to bring the case before the Commission at a time when plenary evidence was obtainable and justice could have been done both parties."

The first issue raised by the appellants is: Whether a petition to determine extent of permanent impairment may be maintained by a dependent after death of an injured employee who has been paid compensation for total disability from the date of injury to the date of death under an approved open end agreement.

The agreement of November 4, 1924, to which reference has been made, was as follows: "It is agreed that compensation shall be paid at the rate of Sixteen and no/100 dollars per week during present disability beginning October 21, 1924 and that compensation shall be paid in addition thereto for any subsequent incapacity, either total or partial, due to the same injury, according to the provisions of Sections 12 to 16 inclusive of Chapter 238 of the Laws of Maine 1919, and any amendments thereto."

Section 14 of the Workmen's Compensation Act in effect at the date of the injury, after certain provisions as to compensation and as to period covered in cases of total incapacity, contains this language: "And if the employee shall die before having received compensation to which he is entitled or which he is receiving as provided in this act, the same shall be payable to the dependents of the said employee for the specified period and the said dependents shall have the same rights and powers under this act as the said employee would have if he had lived."

The provisions of Section 14 quoted above are plain and the language of the Act used therein, in our opinion, clearly empowers the widow, whose dependency is unquestioned in this case, to exercise the same right as the deceased could have exercised, had he lived, to ask, under the provisions of Section 16, for a determination of compensation for permanent impairment to the usefulness of the legs.

It is not necessary to enter a discussion as to the vesting of rights on the death of the employee, as, we believe, the right of the dependent widow is established by that part of Section 14 above quoted. The deceased employee's right to compensation for total incapac-

ity under that section was a different and distinct right from that given under Section 16 for compensation for permanent impairment to the usefulness of his legs, but both rights were his under the Act.

The fact that the employee up to the time of his death had been receiving, under the approved agreement, compensation equal in amount of weekly payments to that which he might receive under Section 16, dispensed with necessity or reason for proceeding under the latter section, but the right to so proceed nevertheless existed and, under what we believe is the plain meaning of Section 14, was not lost to the dependent widow at the death of the employee. Either the employee, if there had been refusal to pay compensation, or the insurance carrier, if it had felt that the amount it was paying was excessive, could, despite the agreement, have asked for a determination of permanent impairment. The carrier refused payment to the widow, and Section 14 gives to dependents "the same rights and powers under this Act as the said employee would have if he had lived."

We fail to see the application of *Ripley's Case*, 126 Me., 173, cited by the appellants.

In interpreting and construing statutes the first consideration is to ascertain and give effect to the intention of the Legislature, but when the language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation and construction, and the statute must be given its plain and obvious meaning. *State* v. *Frederickson*, 101 Me., 37; *In re Bergeron*, 220 Mass., 472; *Pease* v. *Foulkes*, 128 Me., 293; 21 R. C. L., Sec. 217, at p. 962; *State Accident Fund* v. *Goldsborough*, 24 A. L. R., at p. 440.

The natural and reasonable construction of Section 14, in connection with the other correlated Sections of the Act, leads to the conclusion that the clear intent was to give to a dependent the right, which the living employee would have had, to petition for determination of permanent impairment.

There is practically an agreement of authority to the effect that the provision of the Workmen's Compensation Laws, which are remedial statutes, should be liberally construed in order that they

may carry out the general humanitarian purpose for which they were enacted. So numerous are the decisions of the courts on this point that we refrain from citation of cases, especially since the Maine Act provides that in "interpreting this act it (the Commission) shall construe it liberally and with a view to carrying out its general purpose. The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act."

In *Nickerson's Case*, 125 Me., 285, at page 288, referring to the above quoted portion of Section 14, the Court says, "We think the passage quoted refers to cases of presumed total incapacity to work, and that the words 'specified period' refer to the period of total disability conclusively presumed to be permanent in cases specified in the following sentence, viz.: 500 weeks, and to the periods of presumed total disability fixed in Section 16."

Section 16 of the Act provides, "In cases included in the following schedule the disability in each such case shall be deemed to be total for the period specified and after such specified period, if there be a total or partial incapacity for work resulting from the injury specified, the employee shall receive compensation while such total or partial incapacity continues under the provisions of sections fourteen and fifteen respectively, but in no case shall compensation continue more than three hundred weeks after the injury. The compensation to be paid for the injuries hereinafter specified shall be as follows, to wit.: (among other injuries) "For the loss of a leg, or any part at or above the ankle, two thirds the average weekly wages during one hundred fifty weeks."

Section 16 closes with this clause, "In all cases in this class where the usefulness of a member or any physical function thereof is permanently impaired, the compensation shall bear such relation to the amount stated in the above schedule as the incapacity shall bear to the injuries named in this Schedule and the Commission shall determine the extent of the incapacity."

In our opinion this last quoted portion of Section 16, applying, as it clearly does, to "all cases in this class" as defined in Section 16, brings the dependent widow within the provisions of the above quoted portion of Section 14, as it is interpreted by *Nickerson's*

*Case,* supra, and that she had the right to bring her petition to determine the extent of permanent impairment.

On the point under consideration we have to do only with the provisions of Section 14 in effect at the date of the injury. With any changes due to later amendments we are not concerned at this time. It is our conclusion, and we so find, that under the provisions of Section 14 the dependent widow in this case was entitled to maintain her petition for permanent impairment after the death of her husband, the injured employee, who was paid under an approved open end agreement compensation for total disability from the date of injury to the date of his death.

The second issue raised is whether a petition for determination of extent of permanent impairment of the usefulness of the legs resulting from an injury to the spine may be maintained under the provisions of the Workmen's Compensation Act.

The appellants contend that the provisions of Section 16 relating to permanent impairment can not be extended to cover the injuries enumerated in Section 14, in which latter section is included injury to the spine resulting in permanent and complete paralysis of the legs.

The answer to this contention is that the injury to which the petition relates is defined, not in Section 14, but in Section 16, and relates to the permanent impairment of the usefulness of members or physical functions thereof as therein defined.

The third issue raised is that the decision of the Commission denying the award of compensation to the widow on her petition under Section 12 bars the present petition.

It is sufficient to say that the denial of the former petition, on the ground that death was not due to the injury, does not take away or affect the other right of the dependent widow to bring the petition under consideration, a right distinct and separate from the right to petition under Section 12.

The fourth issue raised is that an award for permanent impairment can not be made after death.

Under the Act in force at the time of the accident and controlling the rights of parties in the present case the Commission unquestionably had the right to make an award on the basis of per-

manent impairment. The degree of impairment, if any, was a question of fact to be decided from the evidence presented.

The fifth issue raised by appellants is that the petition is barred by laches.

We find nothing in the case supporting such a claim. The first petition filed within six weeks after the death of the petitioner's husband having been denied, the present petition was, within three weeks thereafter, filed and within six weeks the first hearing was held. Then followed a request by the appellants for further hearing with a resultant ensuing delay of three months. Within a month after this second hearing the decree in issue was filed. There was no unreasonable delay, and for whatever delay there may have been the petitioner was in no way responsible.

The sixth issue raised by the appellants is whether the Industrial Accident Commission may order payment by the employer or insurance carrier of compensation for a specified period for permanent impairment, where it is found that the total permanent impairment is attributable to the injury by way of acceleration or aggravation of a preëxisting condition, without a determination by the Commission of the extent to which the preëxisting condition, and the injury, each contribute to the total percentage of the permanent impairment.

We can not concur in the view of the appellants that the doctrine to be applied to such a case as the one under consideration is one of degree of contribution to the impairment. There is no provision for the application of such a doctrine in the Workmen's Compensation Act of this State and decisions refusing to recognize it are, *Indiana Abattoir* v. *Coleman et al* (Ind.), 117 N. E., 502; *In re Madden*, 222 Mass., 487; *Hills* v. *Oval, etc., Co.*, 191 Mich., 411, 158 N. W., 214; to same effect *Hanson* v. *Dickinson* (Iowa), 176 N. W., 823.

We see no reason to disagree with the findings of the Commission, as far as they relate to the fact and degree of impairment and as far as they relate to the findings that such impairment was attributable to the injury itself. As to the amount of the award, however, we can not agree. The decree ordered the Steward Read Company or its insurance carrier to pay to the petitioning dependent

widow compensation for a period of 285 weeks, less 211 weeks, during which compensation had been paid to the employee before his death and to the petitioner thereafter. We can see no reason why this period should not be 300 weeks, less the 211 weeks, because Chapter 238 of the Public Laws of 1919, which added the last paragraph to Section 16, obviously affected only the amount of compensation and did not change the period previously fixed, namely, 300 weeks, during which the compensation was to be paid. Prior to the 1919 Act the loss of a member was construed to mean an actual loss by severance and not a loss which might be attributed to incapacity, but this 1919 Act provided in terms for compensation for permanent impairment of the usefulness of a member or any physical function thereof. In the case before us, the Commission found that the percentage of impairment of each leg was 95% and under the Act applicable to the instant case the petitioning dependent widow was entitled, as we construe the statute, to 95% of "two-thirds the average weekly wages" during 300 weeks. The average weekly wage of the deceased, Mr. Estabrook, according to the record in this case, was $33.00. 95% of that amount would be in excess of $16.00 a week, which was prior to the 1919 Act and is now the maximum limitation. Section 16, to repeat, states that "in all cases in this class where the usefulness of a member or any physical function thereof is permanently impaired, the compensation shall bear such relation *to the amount stated in the above schedule* as the incapacity shall bear to the injuries named in this schedule and the Commission shall determine the extent of the incapacity." "The above schedule," in our opinion, clearly refers not to the maximum and minimum limitation, but to the preceding schedule, which includes the provision for the loss of a leg. Having in mind that the average weekly wage in the instant case was $33.00, our interpretation of Section 16 is that the percentage of impairment should be applied to "two-thirds of the average weekly wages" and not to the maximum limitation of $16.00 a week. Inasmuch as two-thirds of the average weekly wage is in excess of $16.00, the amount payable can not exceed the $16.00 provided by the statute.

It is not clear from the record just what weekly amount was

ordered, but we assume that it was $16.00 a week, which amount, we believe, should be applied in this case, not to 285 weeks less 211 weeks, but to the entire period of 300 weeks, less 211 weeks.

*Appeal sustained.*
*Decree in accordance*
*with this opinion.*