Joseph Denis POITRAS

v.

R. E. GLIDDEN BODY SHOP, INC. and New Hampshire Insurance Company.

Supreme Judicial Court of Maine.

Argued Nov. 12, 1980.

Decided June 18, 1981.

McTeague, Higbee & Tucker, Patrick N. McTeague, Brunswick, for plaintiff.

Rudman & Winchell, Richard Byer, Michael P. Friedman, Bangor, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN * and ROBERTS, JJ.,

WERNICK, Justice.

Worker Joseph Denis Poitras has appealed from a pro forma judgment of the Superior Court (Penobscot County). The judgment affirmed the decision of the Workers' Compensation Commission, made on a Petition for Review of Incapacity brought by the worker's employer R. E. Glidden Body Shop, Inc., finding that the worker's incapacity to earn had changed from total to partial and ordering a corresponding change in the compensation to be paid the worker.

When this case was previously before us, *Poitras v. R. E. Glidden Body Shop, Inc.*, Me., 424 A.2d 326 (1981), we remanded it to the Superior Court for entry of an appropriate pro forma judgment that would be a final judgment. The instant appeal is from the entry of such a final judgment.

On October 22, 1975, while in the course of his employment, the worker was injured when a three-pound hammer he was using slipped and broke his left wrist. The worker underwent a series of wrist fusion and bone graft operations. A fusion undertaken in April of 1976 was unsuccessful and was repeated later in 1976. Because of unrelieved pain following the second operation, a third fusion was performed to graft additional bone in an effort to insure the strength of the fusion. The fusion itself deprived the worker of mobility or flexibility in his wrist, and the multiple surgical procedures caused his wrist to be extremely tender.

The worker was suffering from various medical problems when he sustained his work-related injury. As a result of a childhood injury, he had sight in only one eye. He had a long history of ulcer problems. Since surgery in 1974 for the ulcer condition, the worker had experienced severe cramps and substantial weight loss. Yet,

these preexisting health difficulties had not prevented him from working full-time at his job as an auto body repairman. There is no showing that the work-related injury aggravated, or in any way affected, the worker's preexisting but non-disabling health impairments. At the time of his work-related injury, the worker was 50 years of age and unable to read or write. He had always worked in the auto body repair business.

After he sustained his injury, the worker and his employer executed, on April 3, 1976, an open-ended agreement calling for payment of compensation to the worker for total incapacity to earn. The agreement was duly approved. On August 30, 1978, the employer filed the instant Petition for Review of Incapacity. Hearings on the petition were held on three occasions between December, 1978 and March, 1979, at which the Commission received the testimony of the worker, of an orthopedic surgeon Dr. Kimball and of Dr. Philip Mossman, Director of Rehabilitation at Eastern Maine Medical Center.

Dr. Kimball performed the last fusion operation on the worker on December 7, 1977 and saw him regularly until September 27, 1978. The evidence shows that Dr. Kimball had no knowledge, either at the time of treatment or at the time of the hearing, of the worker's preexisting medical problems. The doctor testified that even though the worker's wrist had been successfully fused, the repeated surgical procedures had left it sensitive to even slight pressure. His opinion, as of the time of his June 12, 1978 examination, was that the worker "[s]hould be able to return to some form of light to moderate work."

When, however, Dr. Kimball examined the worker on September 27, 1978, he found a definite deterioration in the worker's ability to use his wrist. Unable to identify the reason for this deterioration, Dr. Kimball referred the worker to Dr. Philip Mossman. Dr. Mossman first saw the worker on Octo-

* GLASSMAN, J., sat at argument and participated in conference but died before the opinion was adopted.

ber 19, 1978. In the course of his initial examination Dr. Mossman became aware of the worker's other medical problems, and his testimony concerning the worker's condition and opportunities for employment are based on his awareness of the worker's overall physical condition. Dr. Mossman testified that he found an improvement in the worker's wrist condition, attributable to the physical therapy program in which the worker was participating. Evaluating the worker's total condition, however, Dr. Mossman testified that he was not optimistic about the worker's prospects for remunerative employment. In response to questions concerning the employment opportunities in the Bangor area for someone with the worker's limitations, Dr. Mossman stated:

"we have a vocational unit that deals with this type of problem, and it would be my feeling that Mr. Poitras—I could even generalize. Anybody with this condition would have to have a very definite advocate or someone who has definite connections who could, I mean, even making out a job application, somebody who has to take an advocacy role to help a potential employee in such a situation."

The worker testified that he had not worked since the injury to his left hand. He stated that he sought employment as a stock clerk but that he had not been hired because of his lack of education.

Purporting to engage in the two-step analysis traditionally prescribed for evaluating an employer's Petition for Review of Incapacity, the Commission first found that the worker's

"medical condition had improved sufficiently to warrant a finding that the total incapacity for which the [e]mployee was being compensated had diminished."

The Commission then determined that

"the evidence presented by the [e]mployee was not sufficient to convince . . . the Commission that his efforts to secure suitable employment were reasonable under the totality of circumstances."

On the basis of these findings the Commission concluded that the worker's incapacity to earn had changed from total to partial.

The Commission's decision has generated two questions on appeal: (1) whether the Commission improperly failed to consider the worker's total physical condition when evaluating the improvement in the worker's medical condition; and (2) whether the Commission's finding that the worker had failed to discharge his burden of production on the issue of the availability of employment was based on a misconception of the nature of that burden.

We sustain the appeal and set aside the pro forma judgment of the Superior Court. We conclude that in arriving at its determination that the worker's physical disability had improved, thereby to cast a burden of production on the worker, the Commission committed the error of refusing to take into account the total medical condition of the worker.

It was the Commission's position that *only work-related* medical problems are to be considered in evaluating whether there has been improvement in a worker's physical ability to perform remunerative work. This appears from that part of the Commission's decision stating:

"This Employee has several medical problems which have necessitated medical treatment. The Commission finds that the gastrointestinal and ulcer conditions are not in any way related to the injury of October 22, 1975. The Employee had worked with these medical problems prior to October 22, 1975. *The Commission finds that the Employee's left wrist and hand are the only areas affected by the compensable injury of October 22, 1975.* On the basis of the medical evidence presented, *especially the improvement of the hand function as noted by Dr. Mossman,* the Commission finds that the Employee remains only 40% disabled as a result of the compensable injury of October 22, 1975." (emphasis added)

We interpret this language as saying that an employer is not responsible for disability produced by a preexisting medical condition if such condition is not causally connected to the work-related injury.

In the circumstances where a worker having a preexisting medical condition, not restrictive of his ability to perform remunerative work prior to the occurrence of a work-related injury, seeks compensation for the total extent of his physical disability, notwithstanding that the work-related injury neither aggravated the preexisting condition nor precipitated additional complications, this Court has held it to be error for the Commission to seek to apportion disability between the preexisting medical condition and the work-related injury that have *combined* to produce disability. *Gagnon's Case*, 144 Me. 131, 65 A.2d 6 (1949); *Soucy v. Fraser Paper, Limited*, Me., 267 A.2d 919 (1970) and *Wadleigh v. Higgins*, Me., 358 A.2d 531 (1976).

In *Gagnon's Case, supra*, the worker had sustained a work-related injury for which she was hospitalized. After she was released from the hospital it was discovered that she had Parkinson's disease. We specifically noted that though it was likely the employee had the disease prior to the work-related fall, the disease had not restricted her ability to work. In addition, we observed that the disease "was in no way connected with the accident." *Id.*, 144 Me. at 132, 65 A.2d 6. On the employer's Petition for Review, the Commission apportioned the worker's total incapacity between the work-related back injury and the Parkinson's disease, awarding the worker compensation for the 75% disability that the Commission attributed to the work-related injury. Holding this approach erroneous on the ground that the employer was responsible for the worker's total incapacity, we said:

"In the case of Miss Gagnon there is no evidence to indicate that her capacity to earn the wages which she was receiving at the time of the accident has been impaired because of the disease. Except for the accident she might still be able to earn the same wages. Assuming that she could, the appellees would be responsible for her total incapacity." *Id.*, at 133, 65 A.2d 6.

*Soucy v. Fraser Paper, Limited*, Me., 267 A.2d 919 (1970) involved a worker who fell at work. After a period during which his condition did not improve, it was found that the worker was suffering from amyotrophic lateral sclerosis. The Commission found that the worker's incapacity was caused by motor neuron disease. Thus finding that the worker's incapacity was not connected with his work-related injury, the Commission sustained the employer's Petition for Review of Incapacity. This was error, we said, since

"[p]etitioner's present incapacity would continue to be compensable:

"1) If the fall is the sole cause of the present incapacity.

"2) If the fall caused or precipitated the neurological disorder or if the neurological disorder existed before the fall and was aggravated by the fall. *Goldthwaite v. Sheraton Restaurant*, 154 Me. 214, 145 A.2d 362 (1958).

"3) If effects of the fall and of the neurological disorder combine to produce the incapacity. *Gagnon's Case*, 144 Me. 131, 65 A.2d 6 (1949)." *Id.* at 921–922.

In *Soucy*, the medical testimony was in disagreement regarding whether the work-related fall could have caused or precipitated the motor neuron disease. However, we found it unnecessary to resolve the causation question because

"there was no competent evidence before the Commissioner from which he could have concluded that the fall had *ceased* to be a contributing factor to Petitioner's incapacity." *Id.*, at 922. (emphasis in original)

*Wadleigh v. Higgins, supra*, involved a work-related injury to a worker who had several preexisting medical problems. The Commission found that the worker was totally disabled but awarded him partial compensation because it attributed only 90% of the disability to the job-related accident. Relying on *Gagnon*, this Court held that the employer was responsible for the full extent of the employee's disability.

■ So, too, it was error in the case at bar for the Commission to apportion the worker's disability between his job-related injury and his preexisting health impairments which had not caused physical disability to work prior to the worker's job-related injury. The Commission's finding that the worker was still 40% disabled as a result of the work-related injury of his wrist established that injury as a continuing causative factor in his disability. Hence, under *Gagnon, Soucy* and *Wadleigh,* notwithstanding that prior health conditions may have combined with the work-related injury to produce a greater than 40% physical disability, that greater disability is fully chargeable to the employer.

Even though the Commission thus committed error in the reasoning process by which it concluded that the worker's physical ability to perform work had improved, we decide that the error does not require a remand of the case to the Commission for further proceedings. On the record before us we are satisfied that the Commission was obliged in any event, *as a matter of law,* to decide against the employer on its Petition for Review of Incapacity and to order continuance of payments to the worker for compensation for total incapacity to earn.

■ The initial showing by the employer of improvement in the worker's physical ability to work, even had this been a determination correctly arrived at by the Commission, would place on the worker the burden to come forward with evidence bearing on whether his work-related injury is causing remunerative work in the market-place to be unavailable to him. If the worker satisfies that burden of production, the ultimate burden of proof on all the evidence borne by the employer, as the party seeking review of incapacity, requires the employer to establish on all the evidence that the greater probability is that the worker is not being deprived of remunerative work in the market-place because of his work-related injury.

For present purposes, then, we must analyze the concept of the burden of production and, more particularly, the nature of the process of determining whether or not that burden has been satisfied.

This is an analysis not unique to worker's compensation cases. It must be pursued in any context in which, to fix the order of presenting evidence, resort is had to the distinction between the never-shifting ultimate burden of proof on all the evidence and the sometimes shifting burden to come forward with evidence. Thus, the inquiry we are now undertaking will have importance, to mention a primary example, in criminal prosecutions wherever a "defense" under the Criminal Code is involved (as distinguished from an "affirmative defense"), as to which under 17–A M.R.S.A. § 5(2)(B) the defendant bears a *burden of producing* evidence to generate the defense and thereby require that the State negate it by reason of the State's ultimate burden of proof on all the evidence. *See, e. g., State v. Lagasse,* Me., 410 A.2d 537, 542 (1980); *State v. Kee,* Me., 398 A.2d 384, 386 (1979).

The concept of a burden of production highlights at once the need to make plain that even though the Worker's Compensation Commission acts as a single tribunal, it nevertheless wears "two hats" in its adjudicatory functioning. It discharges the two separate and distinct responsibilities of being the expositor of law and the finder of facts—the same two functions much more readily discernible, and identifiable, in the traditional judge-jury dichotomy of adjudicatory functioning. If, then, we are to provide the Worker's Compensation Commission with an adequate explanation of what is signified by a burden of producing evidence, as distinguished from the ultimate burden of proof, we would do well to clarify the two roles of the Commission by using as our model the equivalent roles of the judge and jury where the separateness of the functioning is more easily perceived.

So proceeding, we find most enlightening the classical explanation of the burden of production, and the consequences of satisfying it or not, stated in IX *Wigmore on Evidence,* 3rd ed. § 2487 at 278–79.

"[T]he *opportunity to decide finally upon the evidential material that may be offered does not fall to the jury as a matter of course*; . . . each party must first with his evidence pass the gauntlet of the judge; and . . . the judge, as a part of his function in administering the law, is to keep the jury within the bounds of reasonable action. In short, in order to get to the jury on the issue, and bring into play the . . . burden of proof (in the sense of the risk of non-persuasion of the jury) [the ultimate burden of proof on all the evidence], both parties alike [insofar as they may have a burden to produce evidence] *must first satisfy the judge that they have a quantity of evidence fit to be considered* by the jury, and to form a reasonable basis for the verdict. This duty of satisfying the judge is peculiar in its operation, because if it is not fulfilled, the party in default loses, by order of the judge, and the jury is not given an opportunity to debate and form conclusions as if the issue were open to them [as fact-finder]." (emphasis in original)

Thus, when the Commission focuses upon the worker's burden to come forward with evidence, to decide whether or not it has been satisfied, the Commission discharges the same role as the judge presiding over a jury trial. The Commission decides either (1) that the worker has failed to meet the burden of production he bears and that, therefore, the case must be terminated in favor of the employer as to the issue on which the worker bears the burden of production, without need for the employer to have come forward with additional evidence or (2) that the worker has satisfied his burden of production and that, therefore, as Wigmore additionally explains, the worker

"has now put himself in the . . . position that . . . unless the opponent [the employer] now offers evidence against the

claim and thus changes the situation, the jury [the Commission as fact-finder] should not be allowed to render a verdict against reason. . . . The matter is thus *in the hands of the judge* [Commission as expositor of law] *again*, . . .; and he may now, as applying a rule of law, *require the opponent* [employer] *to produce evidence*, under penalty of losing the case by direction of the judge. A duty of producing evidence, under this penalty for default, has now arisen for the opponent [employer]." *Id.*, at 280. (emphasis in original)

By thus clarifying the nature, and consequences, of the Commission's determination whether or not evidence is adequate to satisfy the worker's burden of production, we simultaneously make clear that such determination is *always* a determination of *law*. Fact-finding is not involved, since what is being decided is whether the evidence presented as purporting to satisfy the burden of production is, in the language we have previously quoted from Wigmore,

"*fit to be considered* by the jury [i. e., for factfinding determination], and to form a reasonable basis for the verdict." (emphasis in original).[1]

Thus, the assessment is like that made when the sufficiency of the evidence presented by a plaintiff in a civil case is put in question by a motion for directed verdict made by defendant at the close of plaintiff's case—subject, however, to the important qualification that the criterion of evaluation regarding one who has *only* a burden of production, and does not have the ultimate burden of proof as well, will be in the terms of whether the rational tendency of the evidence is to *defeat*, rather than sustain, that there is a preponderance of probability as to the ultimate proposition at stake.[2] This means, then, that the issue of

1. If there are any intimations contrary to this view in *Hinds v. John Hancock Mutual Life Insurance Company*, 155 Me. 349, 365–66, 155 A.2d 721 (1959), we note that *Hinds* has been superseded by Rule 301 M.R.Evid.

2. Of course, where a defendant in a criminal case bears a burden of production as to a

"defense", the criterion of the sufficiency of evidence presented to satisfy that burden of production is whether it defeats the prosecution's burden to remove all reasonable doubts, i. e., whether the evidence as to the "defense" is "sufficient to raise a reasonable doubt on the issue." 17–A M.R.S.A. § 5(2)(B).

whether the worker has met a burden to come forward with evidence imposed upon him in relation to an employer's petition for review of the worker's entitlement to be paid compensation for total incapacity to earn is always an issue of *law*, and the evaluation of that issue of law is by the following process. The initial inquiry is whether the evidence adduced to sustain the burden of production is *capable* of being believed by a rational fact-finder, i. e., whether it *can*, not whether it *will*, be believed. If the answer is negative, the evidence is insufficient to meet the burden of production, and no further inquiry is necessary. If the answer is affirmative, however, then a second phase of evaluation is undertaken. In this second phase, (1) it is *assumed* that the fact-finder will believe the evidence and will give it maximum weight in favor of the proponent bearing the burden of production (that is, the evidence is taken most favorably to its proponent); and (2) on such assumption, the evaluation is whether the qualitative content of the evidence is such that rational persons, deliberating rationally, can disagree as to whether it *negatives* as *more probable* than not that the work-related injury suffered by the worker continues to cause remunerative work in the market-place to be unavailable to him. An affirmative answer establishes that the evidence is sufficient, and a negative answer that it is insufficient, to satisfy the burden of production.

This detailed explanation makes plain that since the issue of the sufficiency of the evidence to meet the worker's burden of production is a question of *law*, it is the prerogative of this Court to make its own independent determination of the issue.

We conclude that, here, the evidence presented by the worker was legally sufficient to satisfy his burden of production. In *Warren v. Vinalhaven Light & Power Company*, Me., 424 A.2d 711 (1981) we held that no particular kind of evidence is substantively required to meet the worker's burden of production and that the worker may present any competent, and otherwise admissible, evidence tending to show that because of his work-related injury, remunerative work is unavailable to him in the market-place. The record in the case at bar contains the testimony of Dr. Philip Mossman, whose position as Director of Rehabilitation at Eastern Maine Medical Center provided him with a comprehensive understanding of the employment opportunities available to the handicapped in the Bangor area. In addition, since Dr. Mossman had been one of the worker's treating physicians, he had specific and first hand knowledge of the worker's condition. Dr. Mossman testified that lacking the assistance of an advocate, a person with the worker's physical and educational limitations would experience great difficulty obtaining employment. This was competent and admissible evidence plainly capable of being believed. Moreover, if believed and given maximum weight, it would have

> "a rational tendency to offset the reasonableness of continuing to believe that work 'ordinarily' available in the competitive labor market will not be denied to this particular worker because of the still existing effects of the work-related injury he sustained."*Ibbitson v. Sheridan Corp.*, Me., 422 A.2d 1005, 1011 (1980).

We conclude, therefore, that even had there been no error in the Commission's finding that the worker's physical ability to perform remunerative work had improved, the worker had presented evidence sufficient to satisfy the burden of production thereby imposed on him. Accordingly, the worker having satisfied his burden of production, the legal consequence was that the ultimate burden of proof borne by the employer required that the employer come forward with evidence that could rationally establish as more probable than not that the work-related injury sustained by the worker was no longer causing a total unavailability to the worker of remunerative work in the market-place. There is no such evidence in this case. Hence, *as a matter of law* the employer must be held to have failed to meet its ultimate burden of proof to show that more probably than not, despite the worker's injury, there was remu-

nerative work in the market-place available to him.

The entry shall be:

Appeal sustained; pro forma judgment of the Superior Court vacated; case remanded to the Commission with directions that it deny the employer's Petition for Review of Incapacity and adjudicate that the worker remains entitled to be paid compensation for total incapacity.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.