1999 ME 21

**Russell BOURGOIN**

v.

**J.P. LEVESQUE & SONS.**

Supreme Judicial Court of Maine.

Argued Nov. 30, 1998.

Decided Feb. 1, 1999.

William J. Smith, Van Buren, for employee.

Michael J. Dostie, Tucker & Dostie, P.A., Bangor, for employer.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

CALKINS, J.

[¶ 1] Russell Bourgoin appeals from a decision of the Workers' Compensation Board granting his petition for permanent impairment benefits. The Board found that Bourgoin was entitled to a 23% whole person permanent impairment resulting from his work-related back injury. Bourgoin argues that the Board erred by failing to award permanent impairment benefits for his preexisting diabetic condition. We affirm the Board's decision.

[¶ 2] Bourgoin suffered a back injury related to his employment at J.P. Levesque & Sons on December 12, 1988. In 1997 Bourgoin petitioned the Board to determine the extent of permanent impairment. Pursuant to the law in effect on the date of his injury, 39 M.R.S.A. 56–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8, the Board found that this injury resulted in a 23% permanent impairment. The Board also found that Bourgoin had a preexisting diabetic condition which resulted in a 30% permanent impairment. The Board granted Bourgoin's petition, but it awarded benefits only for the 23% permanent impairment attributable to his work-related injury. We granted Bourgoin's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp. 1998). The only issue presented by this appeal is whether the Board erred in holding that Bourgoin was not entitled to benefits for the 30% permanent impairment attributable to his diabetes.

[¶ 3] Prior to 1987, permanent impairment benefits were calculated according to a detailed schedule of benefits corresponding to the loss of specifically enumerated body parts. *See* 39 M.R.S.A. §§ 56, 56–A (Pamph. 1986), *repealed and replaced by* P.L.1987, ch. 559, pt. B, § 33 (effective Nov. 20, 1987). In 1987 this "body part" approach to the permanent impairment calculation was repealed and replaced with a "whole body" approach. P.L.1987, ch. 559, pt. B, § 33 (effective Nov. 20, 1987) (codified at 39 M.R.S.A. § 56–B (1989)), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). This "whole body" statute, former section 56–B, provides in pertinent part:

1. Weekly benefit. In the case of permanent impairment, the employer shall pay the injured employee a weekly benefit equal to ⅔ of the state average weekly wage ... for the number of weeks shown in the following schedule:

A. One week for each percent of permanent impairment to the body as a whole from 0 to 14%;

B. Three weeks for each percent of permanent impairment to the body as a whole from 15% to 50%;

C. Four and ½ weeks for each percent of permanent impairment to the body as a whole from 51% to 85%; and

D. Eight weeks for each percent of permanent impairment to the body as a whole greater than 85%.

*Id.*

[¶ 4] In *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 943 (Me.1996), we interpreted former section 56–B. Dumond suffered a work-related injury in 1990 which the Board found resulted in a 5% whole body permanent impairment. *Id.* at 941. Dumond also had a preexisting injury which the Board found resulted in a 23% whole body permanent impairment. *Id.* We held that the Board erred when it failed to add the 5% impairment to the 23% preexisting impairment for the purpose of calculating the amount of benefits. *Id.* at 943. We held that, "the Board must consider the permanent impairment attributable to previous injuries when determining whether the impairment falls within the more serious, high percentage of whole body impairments pursuant to former section 39 M.R.S.A. § 56–B." *Id.* We did not hold that Dumond was entitled to be compensated for the 23% impairment due to the preexisting injury. Dumond did not request benefits for the preexisting injury, and therefore, the entitlement to benefits for the preexisting injury was not at issue. The question was whether in *calculating* the amount of benefits owing for the 5% permanent impairment, the preexisting injury had to be taken into consideration.

[¶ 5] Bourgoin asks us to extend the holding in *Dumond* and to interpret former section 56–B as requiring payment of benefits for the combined percentage of permanent impairment which includes his 30% diabetic condition. We decline to do so because of the definition of permanent impairment. At the time of Bourgoin's injury, "permanent impairment" was defined to mean "any anatomic or functional abnormality or loss existing after the date of maximum medical improvement *that results from the injury.*" 39 M.R.S.A. § 2(15), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 102(16) (Supp.1998)) (emphasis added). We conclude that this definition means that Bourgoin is not entitled to permanent impairment benefits under former section 56–B for his preexisting diabetic condition that did not result from the injury, that is, the work-related back injury.[1]

[¶ 6] Bourgoin argues that *Dumond* stands for the proposition that former section 56–B must be interpreted to include all preexisting conditions, whether they are work-related or not. In *Dumond* we said: "There is nothing in [section 56–B] to suggest that the word 'impairment' was intended to include or exclude impairment from prior work or non-work-injuries." *Dumond,* 670 A.2d at 943. That language was dicta and was stated in the context of demonstrating the ambiguity of the statute. It should not be read as interpreting the statute to include nonwork injuries. Furthermore, all of Dumond's injuries were work-related, and, therefore, there was no question of the impact of a nonwork injury.[2]

[¶ 7] Bourgoin also argues that former subsection 56–B(2) supports his theory that the "whole body" approach requires that benefits be paid for preexisting nonwork injuries. Subsection 2 of section 56–B states:

2. Schedules. In order to reduce litigation and establish more certainty and uniformity in the rating of permanent impairment, the commission shall establish by rule a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. The schedule must be based on generally accepted medical

---

1. Because Bourgoin has not argued for the application of 39–A M.R.S.A. § 201(4) (Supp.1998), governing the liability of an employer in cases involving preexisting conditions, we do not discuss the applicability of that provision to the facts of this appeal.

2. The opinion in *Dumond* does not expressly state that Dumond's preexisting injuries were work-related, but it is apparent from the briefs and record in that case that they were work-related.

standards for determining impairment and may incorporate all or part of any one or more generally accepted schedules for that purpose, such as the American Medical Association's Guides to the Evaluation of Permanent Impairment. Pending the adoption of a permanent schedule, Guides to the Evaluation of Permanent Impairment, 2nd edition, copyright 1984, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes of this subsection.

Bourgoin relies, in part, on the reference to the AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (2d ed.1984). The foreword to the AMA Guides discusses the consideration of "all physical and mental impairments" when determining whole body permanent impairment. *Id.* at iii. The AMA Guides also discuss, however, the necessity of, and procedure for, apportioning impairment between work and nonwork causes in various legal contexts where apportionment is required. *Id.* at ix. We, therefore, are not persuaded that the reference in the statute to the AMA Guides demonstrates a legislative intent to make an employer liable for permanent impairment benefits resulting from a preexisting and wholly nonwork condition.

[¶ 8] Because J.P. Levesque, the employer, failed to cross-appeal the Board's decision, we do not reach the issue argued by it that the Board miscalculated the benefits owing to Bourgoin.[3] J.P. Levesque did not preserve an appeal by filing a petition for appellate review pursuant to 39–A M.R.S.A. § 322. For that reason, it cannot now challenge the calculation employed by the Board. *See Guaranty Fund Mgt. Servs. v. Workers'* *Compensation Bd.,* 678 A.2d 578, 582 (Me. 1996) and *Rosetti v. Land Reclamation,* 1997 ME 197, ¶ 2, n. 2, 704 A.2d 312, 313 n. 2.

The entry is

Decision of the Workers' Compensation Board affirmed.

RUDMAN, J., dissenting.

[¶ 9] I respectfully dissent. Subsection 201(4) of title 39–A provides:

4. Preexisting condition. If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is compensable only if contributed to by the employment in a significant manner.

39–A M.R.S.A. § 201(4) (Supp.1998). Because it is not listed in the implementing statute of title 39–A as having purely prospective application, section 201 applies retroactively to pre–1993 injuries and controls. P.L.1991, ch. 885, § A–10; *see Morgan–Leland v. University of Maine,* 632 A.2d 748, 748–49 (Me.1993) (section not listed in section A–10 applies retroactively to pre–1993 injury).

[¶ 10] The Board has failed to fulfill its statutory obligation. Subsection 201(4), by its plain language, *obligates* the Board to determine whether the work-injury accelerated or combined with the employee's preexisting diabetes in a significant manner. Subsection 4 refers to "any resulting disability." That term "disability" is broader than the term "incapacity" and includes permanent impairment. Had the Legislature intended subsection 4 to apply only to cases of incapacity it could have used a more specific term than "disability." While some states

---

3. The Board calculated the benefits to Bourgoin by adding the 23% impairment from the work-related injury to the 30% impairment from the diabetic condition. Therefore, while it did not give benefits to Bourgoin for the 30% impairment, it took the 30% impairment into consideration in the calculation. It held: "For the first 20% the employee is entitled for each percentage point to three weeks of ⅔ of the state average weekly wage at the time of the injury. For the final 3%, the employee is entitled to 4½ weeks of ⅔ of the state average weekly wage at the time of the injury." This meant that Bourgoin was entitled to 73.5 weeks at ⅔ of the average weekly wage. In contrast, Bourgoin requests that he receive the appropriate payment for each percentage point of 46 percentage points. That figure of 46% comes from the table for determining combined values of two or more impairments in AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT 240 (2d ed.1984), and would equal 110 weeks. The employer argues in his brief that Bourgoin should get only 41 weeks of the appropriate weekly wage (14 weeks pursuant to section 56–B(1)(A) and the remaining 9 percentage points at 3 weeks each pursuant to section 56–B(1)(B)).

use the term "incapacity" and "disability" interchangeably, the Maine Act is unique in that it is one of the few Acts that has at one time, recognized "permanent impairment" as a "loss of bodily function" concept distinct from wage loss. *See* 1C ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 57.14(f) (1993). In light of the Legislature's use of this broad term "disability," I would conclude that an employee may receive permanent impairment benefits for the combination of work and preexisting nonwork-injuries as long as the work-injury "accelerates or combines with" the preexisting condition.

[¶ 11] The employer contends, however, that the term "permanent impairment," by definition, cannot refer to anything other than impairment caused by a work-related injury. At the time of the employee's injury, "permanent impairment" was defined to mean "any anatomic or functional abnormality or loss existing after the date of maximum medical improvement *which results from the injury.*" 39 M.R.S.A. § 2(15) (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A-7, A-8 (codified as 39-A M.R.S.A. § 102(16) (containing identical language)) (emphasis added). Because permanent impairment is defined with respect to work-related causes, it is impossible for "permanent impairment" to be the result of a nonwork-injury.

[¶ 12] As we suggested in *Estabrook v. Steward-Read Co.,* 129 Me. 178, 185–86, 151 A. 141, 145 (1930), however, when a work-injury "accelerates" a preexisting condition, it may be fictitious to suggest that permanent impairment is solely the result of a preexisting condition. The answer to the employer's argument depends on what it means to "accelerate" or "combine with" a preexisting condition in subsection 201(4). If a subsequent work-injury "combines with" a preexisting condition to such an extent that the two conditions are essentially a single condition, then the employee's preexisting condition is actually attributable to the work-injury. For example, consider an employee with a preexisting, but asymptomatic, back-injury. If a subsequent work-injury accelerates that condition and creates a permanent

impairment that may not have occurred in the absence of the work-injury, then it may not be possible to say that any portion of the permanent impairment is solely attributable to the preexisting condition. Indeed, this appears to the basis of *Estabrook,* 129 Me. at 185–86, 151 A. at 145.

[¶ 13] In *Poitras v. R.E. Glidden Body Shop, Inc.,* 430 A.2d 1113, 1117–18 (Me.1981), we held that the employee was entitled to compensation for the entire incapacity resulting from the combination of the employee's work-related wrist-injury and a preexisting eye and stomach condition, even though "[t]here [was] no showing that the work-related injury aggravated, or in any way affected, the workers's preexisting but non-disabling health impairments." *Id.* at 1115. I conclude that subsection 201(4) was drafted in response to *Poitras* and similar cases. *See* L.D. 2464, Statement of Fact (115th Legis.1991).

[¶ 14] I would suggest that subsection 201(4) was not intended to modify the rule of *Poitras* on the issue of compensability of a work-injury combined with an unrelated preexisting condition. The statute was intended to limit the rule of *Poitras* by adding the requirement that the work-injury accelerate or combine with the preexisting condition "in a significant manner." The phrase "in a significant manner" appears to be the key change to the rule. For example, an employee who has preexisting multiple sclerosis and suffers a minor subsequent work-injury, such as minor facial disfigurement, would not be able to look to his employer for full benefits for his multiple sclerosis, because the work-injury does not "combine with" the nonwork-injury "in a significant manner." If, however, the subsequent work-injury is more significant, for example blindness, or if the injury significantly accelerates the progression of multiple sclerosis (if that is medically possible), then it may be possible to meet the "significant manner" standard of subsection 201(4).

[¶ 15] The Legislature's enactment of 39-A M.R.S.A. § 201(4), by its plain language, controls in any case involving the combination of a work-injury and preexisting conditions. The Board erred in not making a determina-

tion under section 201(4). I would remand to the Board for the initial application of subsection 201(4) to the facts of this case.