1999 ME 192

Catherine CHURCHILL

v.

**CENTRAL AROOSTOOK ASSOCIATION FOR RETARDED CITIZENS, INC., et al.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 1999.
Decided Dec. 22, 1999.

Norman G. Trask (orally), Currier & Trask, P.A., Presque Isle, for employee.

Paul H. Sighinolfi (orally), Jane E. Skelton, Rudman & Winchell, LLC, Bangor, for employer.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

■ [¶ 1] The employee, Catherine Churchill, appeals from a decision of the Workers' Compensation Board granting her petition to determine the extent of permanent impairment related to a 1995 aggravation of a 1985 Massachusetts work-injury. Churchill contends that the Board erred when it concluded that separate injuries suffered by the employee on different dates, when both those injuries contribute to the permanent impairment of the employee, cannot be combined to determine whether the impairment exceeds the 11.8% threshold, above which employees can receive more than 260·weeks of partial incapacity benefits pursuant to 39–A M.R.S.A. § 213 (Supp.1998). Relying on the language of section 213 and its provision of a permanent impairment threshold to preserve the longer-term award of benefits for those employees with the most serious whole body impairments, and on the provisions of section 201(4) regarding the relationship of preexisting conditions to work injuries, we agree with Churchill and conclude that the determination of the extension of permanent impairment may include the consideration of the contribution of more than one injury. Accordingly, we vacate the decision of the Commission.

[¶ 2] The facts are not in dispute. Churchill suffered a work-related back injury while employed in Massachusetts in 1985. She settled her workers' compensation claim with her Massachusetts employer in 1987. Shortly thereafter, she moved to Maine and began working for Central Aroostook Association for Retarded Citizens, Inc. (CAARC), where, in August of 1995, she suffered a´second work-related injury. In a 1997 decision, the Board granted Churchill's petition for award and awarded 60% partial incapacity benefits. In the same decree, the Board concluded that, because the 1995 injury was a "significant" aggravation of the 1985 injury, CAARC would be fully liable for the combined effects of both injuries. *See* 39–A M.R.S.A. § 201(4) (Supp.1998).[1]

[¶ 3] In 1998 Churchill filed a petition to determine the extent of permanent impairment. Pursuant to section 213, most employees suffering permanent impairment are limited to 260 weeks of partial incapacity benefits.[2] The Legislature has

---

1. Title 39–A M.R.S.A. § 201(4) provides:
   **4. Preexisting Condition.** If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is compensable only if contributed to by the employment in a significant manner.

2. Subsection 213(1) also authorizes the Board, in its discretion, to extend the 260 week limitation in cases of extreme financial hardship. Subsection 213 provides, in pertinent part:
   **§ 213. Compensation for partial incapacity**
   **1. Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211. *Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both.* The board may in the exercise of its discretion extend the duration of benefit entitlement beyond 260 weeks in cases involving extreme financial hardship due to inability to return to gainful employment. This authority may not be delegated to a hearing officer and such decision must be made expeditiously.
   **2. Threshold adjustment.** Effective January 1, 1998, and every other January 1st thereafter, the board using an independent actuarial review based upon actuarially sound data and methodology, must adjust the 15% impairment threshold established in subsection 1, so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than that threshold ....

determined, however, that a quarter of permanent impairment cases are serious enough to warrant the payment of partial incapacity benefits in excess of the 260 week limit. In subsection 213(2), the Legislature estimated that the most serious permanent impairment cases would be those where the employee's whole body impairment is in excess of 15%, and accordingly, established that "[c]ompensation must be paid for the duration of the disability if the employee's permanent impairment ... resulting from the personal injury is in excess of 15% to the body." 39–A M.R.S.A. § 213(1).

[¶ 4] Section 213(2) goes on to provide that the Board adjust the 15% threshold "so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold," and thus will be limited to a maximum of 260 weeks of benefits. In 1998 the Board exercised its statutory authority pursuant to subsection 213(2) and adjusted the impairment threshold from 15% to 11.8%. *See* WCB Rule ch. 2, § 1 (1998).

[¶ 5] The Board granted Churchill's petition in June of 1998, concluding that she has a 15% whole body permanent impairment related to both injuries, and that 6% of that impairment relates to the 1995 injury, while the remaining 9% is attributable to the 1985 injury. The Board, however, rejected Churchill's contention that the impairment from both injuries should be combined for purposes of determining whether her impairment exceeds the 11.8% threshold. Accordingly, Churchill is limited to 260 weeks of permanent impairment benefits. The Board denied Churchill's motion for findings of fact, and, pursuant

to 39–A M.R.S.A. § 322 (Supp.1998), we granted her petition for appellate review.

[¶ 6] The effect of preexisting conditions on the determination of permanent impairment has been addressed in different ways under different statutory schemes. Prior to 1965, the term "permanent impairment" referred to so-called "schedule benefits," i.e., a schedule of benefits corresponding to the loss of specifically enumerated body parts. *See* P.L.1915, ch. 295, § 16; *Estabrook v. Steward–Read Co.*, 129 Me. 178, 186, 151 A. 141, 145 (1930). Permanent impairment and incapacity benefits were both intended to compensate employees for lost earning capacity, and employees were prohibited from receiving compensation for both permanent impairment and incapacity. *See Boehm v. American Falcon Corp.*, 1999 ME 16, ¶ 6, 726 A.2d 692, 693; *Campbell v. Bates Fabrics, Inc.*, 422 A.2d 1014, 1015, n. 5 (Me.1980).

[¶ 7] In 1965 the Legislature amended former section 56 of 39 M.R.S.A. to provide that permanent impairment benefits were no longer regarded as compensation for lost earning capacity, but rather for loss of bodily function. Benefits were provided pursuant to a schedule for impairment to individual body parts. Permanent impairment benefits could be awarded "in addition to" incapacity benefits. P.L.1965, ch. 408, § 5. *See, e.g.,* 39 M.R.S.A. § 56 (Pamph.1986), *repealed and replaced by* P.L.1987, ch. 559, Pt. B, § 31.

[¶ 8] In 1987 the individual body parts approach to permanent impairment benefits was replaced with the so-called "whole body" approach, in which permanent impairment was calculated as a percentage of

---

**3. Dates of injury between January 1, 1993 and January 1, 1998.** An employee whose date of injury is between January 1, 1993 and January 1, 1998, who has not settled the claim pursuant to section 352 and whose impairment rating is 15% or less to the body but exceeds the adjusted threshold established pursuant to subsection 2 on January 1, 1998 is entitled to compensation for the duration of the disability. Reimbursement to the employer, insurer or group self-insurer for the payment of all benefits payable in excess of 260 weeks of compensation under this subsection must be made from the Employment Rehabilitation Fund.

    ....

39–A M.R.S.A. § 213 (emphasis added).

total body impairment, and the number of weeks of benefits were determined according to a "sliding scale" based on the severity of the employee's whole body impairment. *See* P.L.1987, ch. 559, Pt. B, § 33, *codified as* 39 M.R.S.A. 56–B (1989), *repealed by* P.L.1991, ch. 885, § A–7. Former section 56–B provided, in pertinent part:

1. **Weekly benefit.** In the case of permanent impairment, the employer shall pay the injured employee a weekly benefit equal to ⅔ of the state average weekly wage ... for the number of weeks shown in the following schedule:

A. One week for each percent of permanent impairment to the body as a whole from 0 to 14%;

B. Three weeks for each percent of permanent impairment to the body as a whole from 15% to 50%;

C. Four and ½ weeks for each percent of permanent impairment to the body as a whole from 51% to 85%; and

D. Eight weeks for each percent of permanent impairment to the body as a whole greater than 85%.

. . . .

*Id.*

[¶ 9] In *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 940–41 (Me.1996), we addressed the issue of preexisting conditions and permanent impairment in the context of the "whole body" approach. The employee suffered 5% whole body permanent impairment from his most recent work-injury and a preexisting 23% whole body impairment from previous work-injuries. *Id.* The issue in *Dumond* was whether the 5% permanent impairment from the most recent work-injury had to be considered separately, as falling within the 0–14% range of permanent impairment to the whole body established in subsection 56–B(1)(A), or added to the 23%, so that the 5% would fall within the 15%–50% range of permanent impairment to the whole body set out in subsection 56–

B(1)(B). *Dumond,* 670 A.2d at 942–43. Noting the substantial change in the statute that went from providing a schedule of benefits for impairment to individual body parts (former sections 56 and 56–A) to one where employees were compensated for impairment to the body as a whole, and relying on the purpose of the statute to preserve the highest recoveries to employees with the highest whole body impairments, we concluded that the impairment from the employee's most recent work-injury could be added to his whole body impairment resulting from his previous work-related injuries, so that the employee's permanent impairment benefits would fall within the 15%–50% range of permanent impairment to the body. Accordingly, pursuant to the sliding scale provisions of section 56–B, the employee was entitled to receive benefits for the higher number of weeks. *Id.* at 943–44.

[¶ 10] In *Bourgoin v. J.P. Levesque & Sons,* 1999 ME 21, 726 A.2d 201, we concluded that the employee, Bourgoin, was not entitled to permanent impairment benefits for his preexisting diabetic nonwork-related condition, and that the 30% impairment resulting from that nonwork condition could not be added to his 23% work-related impairment to be entitled to benefits pursuant to 39 M.R.S.A. § 56–B(1)(C). *Bourgoin,* 1999 ME 21, ¶ 7, 726 A.2d at 202–03. Bourgoin, however, did not argue that his work-related injury aggravated his preexisting condition of diabetes. Accordingly, 39–A M.R.S.A. § 201(4), governing the aggravation of preexisting conditions was not applicable. *Id.,* 1999 ME 21, ¶¶ 4, 8, n. 3., 726 A.2d at 202, 203, n. 3.

[¶ 11] The Maine Workers' Compensation Act of 1992, title 39–A, substantially altered provisions governing permanent impairment benefits. *See* P.L.1991, ch. 885, § A–7 (effective January 1, 1993); *Clark v. International Paper Co.,* 638 A.2d 65, 66–67 (Me.1994). The concept of permanent impairment, however, remains in section 213 as a rough measure of an employee's overall level of work-incapacity.

The purpose of the 15% threshold (since changed to 11.8%) set out in section 213 is to preserve the longer-term awards of benefits for those employees with the highest levels of work-incapacity. *See* Leg. Rec. H–65–66 (3rd Spec.Sess.1992); Report of Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Findings of the Majority of the Blue Ribbon Commission, 2 (August 31, 1992).

[¶ 12] The permanent impairment threshold in section 213, therefore, is somewhat analogous to the "sliding scale" of former section 56–B. As we stated in *Dumond,* 670 A.2d at 942–43, the "whole body" approach is designed to permit the consideration of the effects of multiple impairments to the body "as a whole." Section 213 embraces the whole body approach and reflects a legislative intent to preserve longer-term benefits for those employees with the most severe disabilities. Section 213 permits the consideration of multiple work-related impairments in the determination of the 11.8% threshold.

[¶ 13] Although the employee may combine more than one injury in determining permanent impairment pursuant to section 213, permanent impairment from a preexisting condition cannot be considered unless the preexisting condition is aggravated by, accelerated by, or combines with a work-related injury, and the "resulting disability ... [is] contributed to by the employment in a significant manner" pursuant to 39–A M.R.S.A. § 201(4).

[¶ 14] The Board has already determined in its 1997 decree that Churchill's work injury in 1995 was a "significant aggravation" of her earlier 1985 Massachusetts injury. That conclusion has not been challenged. Accordingly, impairment from both injuries may be combined pursuant to section 213, and when combined, total 15%. Because Churchill's total impairment at-tributable to both injuries exceeds the Board-established 11.8% threshold, she is not limited to 260 weeks of partial incapacity benefits pursuant to section 213.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

