2002 ME 19

Arthur W. KOTCH

v.

AMERICAN PROTECTIVE
SERVICES, INC.

Donald Wheeler

v.

Hartt Transportation Systems, Inc.

Supreme Judicial Court of Maine.

Argued: Dec. 4, 2001.
Decided: Feb. 6, 2002.

Edward Rabasco Jr. (orally), Verne E. Paradie Jr., Gosselin, Dubord & Rabasco, P.A., Lewiston, Janmarie Toker, James G. Fongemie (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employees.

Michael H. Smith (orally), MEMIC; William O. LaCasse (orally), Doris V. Rygalski, Norman Hanson & DeTroy, LLC, Portland, for employers.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The employers in this consolidated appeal challenge decisions of hearing officers of the Workers' Compensation Board finding that the employees have permanent whole body impairments exceeding 11.8%. The decisions mean that the employees are not subject to the 260-week limitation for partial incapacity benefits in 39-A M.R.S.A. § 213 (2001). The employers contend that the hearing officers erred in considering the employees' permanent whole body impairments which resulted from combining the effects of the work injuries with causally unrelated pre-existing conditions. We affirm.

## I. BACKGROUND

### A. *Kotch v. American Protective Services*

[¶ 2] Arthur W. Kotch suffered a work-related back injury on March 23, 1994, while employed as a security guard for American Protective Services. Kotch had a pre-existing left knee injury stemming from his military training with the Marine Corps in 1981. Both injuries were significant and required surgeries.

[¶ 3] In a 1996 decree, a hearing officer of the Board found Kotch eligible for 25% partial incapacity benefits for his 1994 work injury. American Protective sought to discontinue benefits in 1999, contending that Kotch's entitlement to benefits had expired pursuant to the 260-week limitation of section 213. Kotch filed a petition to determine the extent of his permanent impairment and to establish that his permanent whole body impairment exceeds 11.8%.

[¶ 4] The hearing officer found that, although Kotch suffers a 10% whole body impairment related to his work injury, Kotch's permanent whole body impairment is 20% based on the combination of his pre-existing nonwork injury and his work injury. The hearing officer found that "[a]lthough Mr. Kotch's work injury did not aggravate or accelerate his knee condition, it is clear ... that it combines with the preexisting knee condition to contribute to Mr. Kotch's resulting disability in a significant manner." Because Kotch's whole body impairment exceeded 11.8%, the hearing officer granted his petition and concluded that Kotch is not subject to the 260-week limitation of section 213.

### B. *Wheeler v. Hartt Transportation Systems, Inc.*

[¶ 5] Donald Wheeler suffered a work-related hip injury on November 6, 1996, while employed by Hartt Transportation.

Wheeler had numerous injuries prior to his 1996 work injury, including: (1) a gunshot wound in his hand during his military service in Vietnam; (2) a knee injury in 1972 from "walking on hard floors"; (3) a ruptured-disc back injury in 1974;[1] (4) a knee injury while employed by Bekins Moving & Storage in 1994; (5) a crush injury to his thumb while employed by Hartt in 1995; and (6) a serious head injury while employed by Hartt in 1995.

[¶ 6] Hartt voluntarily paid Wheeler partial incapacity benefits following the 1996 hip injury. In 1999 Hartt filed a petition to determine the extent of permanent impairment and to establish that Wheeler's permanent whole body impairment did not exceed 11.8%.

[¶ 7] The hearing officer found that Wheeler suffers a 10% whole body permanent impairment related solely to his 1996 work-related injury. The hearing officer found that there was no evidence of a causal connection between Wheeler's previous injuries and the 1996 injury. The hearing officer concluded, however, that

Wheeler has a 17% whole body impairment "based on a combination of the back injury, a preexisting knee condition, and a preexisting thumb crush injury."

## II. DISCUSSION

[¶ 8] Section 213 of the Workers' Compensation Act limits the receipt of partial incapacity benefits to 260 weeks unless the employee's permanent whole body impairment exceeds the percentage determined by the Board.[2] That percentage, set by the Board, is 11.8%. WCB Rule ch. 2, § 1 (1998).

[¶ 9] In both of these cases, the hearing officers applied 39–A M.R.S.A. § 201(4) (2001), which states: "If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is compensable only if contributed to by the employment in a significant manner." The parties agree that the terms "aggravate" and "accelerate" are not applicable here because they imply either (1) a causal connection between the pre-existing condition and the

---

1. It is unclear from the record whether the injuries in 1972 and 1974 were work-related.

2. Section 213 states in pertinent part:
   § 213. Compensation for partial incapacity
   1. Benefit and duration. While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both. The board may in the exercise of its discretion extend the duration of benefit entitlement beyond 260 weeks in cases of extreme financial hardship due to inability to return to gainful employment. This authority may not be delegated to a hearing officer and such decisions must be made expeditiously.
   2. Threshold adjustment. Effective January 1, 1998, and every other January 1st thereafter, the board, using an independent actuarial review based upon actuarially sound data and methodology, must adjust the 15% impairment threshold established in subsection 1 so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold.
   39–A M.R.S.A. § 213.

subsequent work injury, or (2) a work injury that impacts the same body part that was affected by the pre-existing condition. For both Wheeler and Kotch there is no causal connection between their pre-existing conditions and work injuries, and their work injuries were not to the same body part afflicted by the pre-existing conditions. The issue in both cases, therefore, is whether the work injuries of Wheeler and Kotch "combine with" their pre-existing conditions "in a significant manner."

■ [¶ 10] Hartt and American Protective contend that the phrase "combines with" suggests either that there is a causal relationship between the pre-existing condition and the subsequent work injury, or that the work injury and the pre-existing condition affect the same body part. We disagree. As a matter of common usage, the word "combine" means to "join together" or "unite." The Oxford American Desk Dictionary 112 (1998). We find nothing in the plain meaning of the phrase "combine with" to limit its application to injuries that are causally related or affect the same body part.[3]

■ [¶ 11] Hartt and American Protective argue that, notwithstanding section 201(4), the Legislature did not intend to permit the stacking of a causally unrelated pre-existing permanent impairment with a work-related impairment for purposes of determining the applicability of the 260–week limitation in section 213. The employers rely primarily on the language of section 213(1), providing: "Compensation must be paid for the duration of the disability if the employee's permanent impairment … *resulting from the personal injury* is in excess of [the established percentage] to the body." 39–A M.R.S.A. § 213(1) (2001) (emphasis added).

[¶ 12] We rejected this argument in *Churchill v. Central Aroostook Association for Retarded Citizens, Inc.*, 1999 ME 192, ¶¶ 12–13, 742 A.2d 475, 479. In that case, the employee suffered a work-related back injury in 1995 and a pre-existing back injury in 1985, while employed by a Massachusetts employer. *Id.* ¶ 2, 742 A.2d at 476. Applying subsection 201(4), we held that it was permissible to stack the em-

---

**3.** Our interpretation is supported by the statute's legislative history. Section 201(4) was enacted at roughly the same time as 39–A M.R.S.A. § 201(5) (2001), dealing with subsequent nonwork injuries. Section 201(4) was adopted in the enactment of new title 39–A, *see* P.L.1991, ch. 885, § A–8 (effective Jan. 1, 1993), while the language of section 201(5) dealing with subsequent nonwork injuries first appeared a year earlier as an amendment to former title 39, *see* P.L.1991, ch. 615, § D–3 (codified at 39 M.R.S.A. § 51(4) (Supp. 1992) (effective Oct. 17, 1991)). Unlike section 201(4), however, section 201(5) expressly contains a causation requirement applicable to cases involving subsequent nonwork injuries: "If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act." 39–A M.R.S.A. § 201(5); *see Pratt v. Fraser Paper, Ltd.*, 2001 ME 102, ¶ 12, 774 A.2d 351, 355.

If the Legislature had intended to require a causal relationship between the pre-existing condition and the subsequent work injury, it could have adopted similar language for purposes of section 201(4).

Moreover, at the time section 201(4) was enacted, employers were fully responsible for the combination of work injuries and pre-existing conditions without a requirement of a causal relationship or an identity of body parts. *See, e.g., Poitras v. R.E. Glidden Body Shop, Inc.*, 430 A.2d 1113, 1117 (Me.1981) (employer liable for combination of work-related wrist injury and pre-existing ulcers and vision impairment). In the context of section 201(4), the phrase "aggravates, accelerates or combines with" suggests that the Legislature intended to codify the law as it existed prior to the enactment of the amendment, but to add the additional requirement that the work injury must contribute to the resulting incapacity "in a significant manner."

ployee's whole body impairment from both injuries in determining whether the employee met the 11.8% threshold in section 213. We concluded, in effect, that the phrase "personal injury" in subsection 213(1) may include a pre-existing condition when the work injury aggravates, accelerates or combines with the pre-existing condition in a significant manner. *Id.* ¶¶ 12–13, 742 A.2d at 479.

[¶ 13] Hartt and American Protective suggest that *Churchill* is distinguishable because there both the pre-existing condition and the work injury affected the employee's back whereas the pre-existing conditions of Wheeler and Kotch affect different body parts from their work-related injuries. Our rationale in *Churchill*, however, was not limited to injuries aggravating a pre-existing condition to the same body part. Instead, the holding in *Churchill* was based on the principle of "whole body" impairment embodied by the statute.

■ [¶ 14] The "whole body" approach was first adopted for application in determining "permanent impairment benefits" pursuant to former title 39.[4] *Id.* ¶ 8, 742 A.2d at 477–78. The whole body analysis is founded on the principle that, in some cases, the impairment to the whole body may be greater, or lesser, than the sum of the parts. The loss of two eyes or two arms, for example, might greatly exceed the loss of each eye or arm, if considered separately. It is irrelevant to the overall disability of the employee whether the two injuries are to separate body parts, or the result of unrelated causes.

As we stated with respect to former title 39:

Consistent with the Legislature's primary goal of reducing benefits, the whole body approach is intended to prevent the "stacking" of permanent impairment benefit awards for individual body parts.... It is inherent in the whole body approach, therefore, that the Board consider the cumulative effects of multiple impairments to the body as a whole. To restrict the analysis of whole body impairment to impairment caused by individual injuries standing alone ... defeats the legislative purpose of providing larger awards to employees with greater whole body impairments.

*Dumond v. Aroostook Van Lines*, 670 A.2d 939, 943 (Me.1996) (interpreting former 39 M.R.S.A. § 56–B(1)(A) (1989), *repealed by* P.L. 1991, ch. 885, § A–7).

■ [¶ 15] Similarly, the purpose of the whole body impairment threshold in section 213 is to extend incapacity benefits indefinitely for those employees with serious whole body disabilities. As we stated in *Churchill:*

[T]he "whole body" approach is designed to permit the consideration of the effects of multiple impairments to the body "as a whole." Section 213 embraces the whole body approach and reflects a legislative intent to preserve longer-term benefits for those employees with the most severe disabilities. Section 213 permits the consideration of multiple work-related impairments in the determination of the 11.8% threshold.

1999 ME 192, ¶ 12, 742 A.2d at 479.[5]

The entry is:

---

**4.** Title 39–A repealed permanent impairment benefits and limits employees to incapacity benefits. *See Clark v. Int'l Paper Co.*, 638 A.2d 65, 66–67 (Me.1994).

**5.** Hartt contends further that its appeal is distinguishable from *Churchill* because both

injuries in *Churchill* were "work-related," while it is unclear whether Wheeler's injuries in 1972 and 1974 were work-related. *See Churchill*, 1999 ME 192, ¶ 2, 742 A.2d at 476. There was no determination in *Churchill*, however, that the employee's 1985 Massachu-

Decisions of the Workers' Compensation Board affirmed.

---

setts injury was compensable under Maine law, and we have previously treated work-related injuries as nonwork-related when those injuries are not compensable under the Maine Act. *See LaPointe v. United Eng'rs & Constructors,* 680 A.2d 458, 460–61 (Me.1996) (subsequent injury in other jurisdiction treated as nonwork injury in the absence of a claim under Maine" Act). We do not agree, therefore, that our holding in *Churchill* is limited to cases involving a pre-existing condition from a work injury.

