2010 ME 53

**William BUCKLEY**

v.

**S.D. WARREN COMPANY et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2010.
Decided: June 24, 2010.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, Portland, ME, for William Buckley.

Thomas E. Getchell, Esq. (orally), Troubh Heisler, Portland, ME, for S.D. Warren and CCMSI.

Cara A. Lovejoy, Esq. (orally), Robinson, Kriger & McCallum, Portland, ME, for S.D. Warren and Liberty Mutual.

Richard D. Tucker, Esq. (orally), Tucker Law Group, Bangor, ME, for S.D. Warren and Constitution State Service Co.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

SILVER, J.

[¶ 1] William Buckley appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) granting S.D. Warren Company's petitions to establish permanent impairment and determining that Buckley suffers 7% permanent impairment to his left shoulder from two 1996 work injuries and 7% permanent impairment to his right shoulder from 2000 and 2001 work injuries. The hearing officer further concluded, pursuant to 39–A M.R.S. § 213(1–A)(A) (2009), that the permanent impairment percentages cannot be combined, and therefore, Buckley's permanent impairment level does not exceed the 11.8% threshold for receiving partial incapacity benefits for the duration of his disability. Because we conclude pursuant to section 213 that the permanent impairment values assigned to Buckley's right and left shoulder should have been combined, we

vacate the hearing officer's decision in part.

## I. BACKGROUND

[¶ 2] William Buckley, sixty-seven, worked for S.D. Warren from 1981 until 2002. He suffered five work-related injuries during that period: (1) in February 1992 to his neck and cervical spine; (2) in October 1996 to his left shoulder; (3) in November 1996 to his left shoulder and left knee; (4) in 2000 to his right shoulder; and (5) in 2001 to both shoulders. He has been out of work since the 2001 injury.

[¶ 3] In a 2005 decree addressing all but the 2000 date of injury, the hearing officer (*Sprague, HO*) ruled that Buckley's ongoing partial incapacity was related to the 1996 and 2001 shoulder injuries, but not to the 1992 neck injury. Based on a work search, he awarded Buckley 100% partial incapacity benefits. The hearing officer also apportioned responsibility for the incapacity one-third to the October 1996 left shoulder injury, one-third to the November 1996 left shoulder injury, and one-third to the 2001 bilateral shoulder injury.

[¶ 4] Thereafter, S.D. Warren filed a petition to establish the 2000 injury and a petition for apportionment. It also filed petitions to determine the extent of permanent impairment for each shoulder injury, contending that Buckley's permanent impairment level is less than the applicable threshold of 11.8%, and his partial benefits are subject to the durational limit in 39–A M.R.S. § 213(1). The hearing officer (*Collier, HO*) granted the petition to establish the 2000 injury and apportioned responsi-

bility for Buckley's ongoing incapacity equally among the four shoulder injuries. The hearing officer also determined that Buckley suffers 7% permanent impairment to the left shoulder resulting from the two 1996 injuries, and 7% permanent impairment to the right shoulder resulting from the 2000 and 2001 injuries.[1] The hearing officer did not combine or "stack" the impairment percentages because he found that (1) the 2000 right shoulder injury did not cause any additional permanent impairment to the previously injured left shoulder, and (2) "there is no evidence that the subsequent bilateral shoulder injury in 2001 caused any additional permanent impairment or in any other way aggravated or accelerated the prior injuries to either shoulder."

[¶ 5] According to the hearing officer's decision, Buckley's permanent impairment level falls below the threshold and his partial benefit payments are subject to the durational cap. We granted Buckley's petition for appellate review pursuant to 39–A M.R.S. § 322(3) (2009) and M.R.App. P. 23(c).

## II. DISCUSSION

### A. Introduction

[¶ 6] We are asked to decide whether 39–A M.R.S. § 213(1–A)(A) permits combining permanent impairment resulting from multiple work-related injuries to separate body parts to determine if the employee's level of permanent impairment exceeds the threshold for receiving partial incapacity benefits for the duration of the disability. The hearing officer construed

---

1. Buckley asserts that the hearing officer erred when failing to assign a permanent impairment rating to the 1992 neck injury. The hearing officer, however, found in the 2005 decree that Buckley no longer suffers any incapacity as a result of the neck injury, and therefore denied Buckley's petition for restoration with respect to that injury. In the 2008 decree, the hearing officer explicitly declined to assign any percentage of permanent impairment to the 1992 neck injury based on the 2005 finding. The hearing officer did not err in failing to assign a percentage of impairment to the 1992 neck injury.

section 213(1–A)(A), which applies to work injuries that occurred before January 1, 2002, to require consideration of each work injury separately, and to authorize stacking of permanent impairment from separate work injuries only when later injuries aggravate or accelerate the earlier injuries. Buckley asserts this is an erroneous construction because the statute plainly allows for impairment from interrelated work injuries to be stacked, and that all four injuries were "injur[ies] at issue in the determination," pursuant to section 213(1–A)(A).

## B. Standard of Review

[¶ 7] When construing provisions of the Workers' Compensation Act, our purpose is to give effect to the Legislature's intent. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we look first to the plain meaning of the statutory language, and construe that language to avoid absurd, illogical or inconsistent results. *Id.* In addition to examining the plain language, we also consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Id.* (quotation marks omitted). If the statutory language is ambiguous, we look beyond the plain meaning and examine other indicia of legislative intent, including legislative history. *Id.* Decisions of the Board interpreting ambiguous provisions of the Workers' Compensation Act are ordinarily "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Id.* (quotation marks omitted).

## C. Statutory and Regulatory Background

[¶ 8] Title 39–A M.R.S. § 213 governs partial incapacity benefits and the length of time an injured employee may receive those benefits, depending on the extent to which the employee has been permanently impaired by his injuries. It provides, in relevant part:

**§ 213. Compensation for partial incapacity**

**1. Benefit and duration.** While the incapacity for work is partial, . . . . [*c* ]*ompensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both. . . .*

**1–A. Determination of permanent impairment.** For purposes of this section, *"permanent impairment" includes only permanent impairment resulting from:*

*A. The work injury at issue in the determination and any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination; or*

*B.* For dates of injury on or after January 1, 2002, the work injury at issue in the determination and:

(1) Any prior injury that arose out of and in the course of employment for which a report of injury was completed pursuant to section 303 and the employee received a benefit or compensation under this Title, which has not been denied by the board, and that combines with the work injury at issue in the determination to contribute to the employee's incapacity, except that a prior injury that was the subject of a

lump-sum settlement approved pursuant to section 352 that had a finding of permanent impairment equal to or in excess of the then applicable permanent impairment threshold may not be included; or

(2) Any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination.

*Except as set forth in this subsection, "permanent impairment" does not include a condition that is not caused, aggravated or accelerated by the work injury.*

39-A M.R.S. § 213 (emphasis added).

■ [¶ 9] "Permanent impairment" is defined in the Workers' Compensation Act as "any anatomic or functional abnormality or loss existing after the date of maximum medical improvement that results from the injury." 39-A M.R.S. § 102(16) (2009).

2. Title 39-A M.R.S. § 213(2) (2009) provides, in relevant part:

**2. Threshold Adjustment.** Effective January 1, 1998 and every other January 1st thereafter, the board, using an independent actuarial review based upon actuarially sound data and methodology, must adjust the 15% impairment threshold established in subsection 1 so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold....

3. Me. W.C.B. Rule, ch. 2, § 1(1) provides: "The permanent impairment threshold referenced in 39-A M.R.S.A. § 213(1) and (2) shall be reduced from 'in excess of 15%' to 11.8% or greater effective January 1, 1998. This adjustment is based on an independent actuarial review performed by Advanced Risk Management Techniques, Inc."

The Board increased the permanent impairment threshold for cases with dates of injury between 2002 and 2004 to 13.2%, and for cases with dates of injury after January 1,2004, to 13.4%. Me. W.C.B. Rule, ch. 2, § 1(2), (3) (amended March 11, 2006). The Board recently decreased the threshold to

Pursuant to section 213(2), the Board has adjusted the 15% threshold for injuries occurring during the time period applicable in this case, making Buckley eligible to receive partial benefits for the duration of the disability if he suffers greater than 11.8% permanent impairment. *See* 39-A M.R.S. § 213(1), (2);[2] Me. W.C.B. Rule, ch. 2, § 1.[3] If an employee's permanent impairment level is below that threshold, he is limited to receiving partial benefits for the maximum number of weeks established by statute and rule, which at present is 520 weeks. 39-A M.R.S. § 213(1), (4); Me. W.C.B. Rule, ch. 2, § 2(9).[4] These restrictions are intended to limit the number of workers' compensation cases involving permanent impairment that provide benefits for the duration of the employee's disability to 25% of all permanent impairment cases, with the remaining 75% [of permanent impairment cases] being subject to the durational cap. 39-A

11.8% for dates of injury after January 1, 2006. *Id.* § 1(4) (amended June 17, 2008).

4. Title 39-A M.R.S. § 213(4) (2009) provides, in relevant part:

**4. Extension of 260-week limitation.** Effective January 1, 1998 and every January 1st thereafter, the 260-week limitation contained in subsection 1 must be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average based on frequency from the latest unit statistical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix. The 260-week limitation contained in subsection 1 may not be extended under this subsection to more than 520 weeks....

The Board has exercised its authority five times pursuant to section 213(4) to extend the 260-week limit by fifty-two weeks, such that at present, the durational limit for partial incapacity benefits for injured workers with permanent impairment ratings of less than 11.8% is at the maximum, 520 weeks. Me. W.C.B. Rule, ch. 2, § 2(2), (3), (7), (8), (9).

M.R.S. § 213(2). "The permanent impairment threshold in section 213 reflects a legislative intent to preserve longer-term benefits for those employees with the most severe disabilities." *Harvey v. H.C. Price Co.*, 2008 ME 161, ¶ 11, 957 A.2d 960, 964 (quotation marks omitted).

D.   Title 39–A M.R.S. § 213(1–A)

[¶ 10]   Because all of Buckley's injuries occurred before January 1, 2002, subsection 213(1–A)(A) applies when determining whether the permanent impairment percentages from multiple work injuries or a work injury and preexisting condition may be combined.   The Legislature amended section 213 in 2002 to add subsection 213(1–A)(A) and (B), P.L.2001, ch. 712, § 2 (effective July 25, 2002), in reaction to our decision in *Kotch v. American Protective Services, Inc.*, 2002 ME 19, 788 A.2d 582. *See* Sen. Amend. C to L.D. 2202, No. S–623, Summary (120th Legis. 2002).   The amendment was given retroactive application to pending cases and to injuries occurring on or after January 1, 1993.   P.L. 2001, ch. 712, § 6.

[¶ 11]   In *Kotch*, we held that section 213 permitted the inclusion of permanent impairment from preexisting nonwork injuries that had merely combined with work-related permanent impairment for purposes of applying the durational limitation in section 213.   2002 ME 19, ¶¶ 10–15, 788 A.2d at 585–86.   The Legislature, concerned that including nonwork-related permanent impairment when deciding whether the threshold to extend partial benefits was met would add significant costs to the workers' compensation system, offered an amendment to section 213 that was intended to repeal *Kotch.*   L.D. 2202, S.P. 822 (120th Legis. 2002); *see also* Sen. Amend. C to L.D. 2202, No. S–623, Summary ("This amendment overrides the court decision in *Kotch v. American Protective Services,* 2002 ME 19, 788 A.2d 582, which interpreted the law to allow work injuries to be combined with *unrelated work and nonwork* injuries in determining eligibility for duration-of-disability wage-loss benefits under section 213 of the Maine Workers' Compensation Act of 1992.") (emphasis added).

[¶ 12]   The state of the law prior to *Kotch* was reflected in our decision in *Churchill v. Central Aroostook Ass'n for Retarded Citizens, Inc.,* 1999 ME 192, 742 A.2d 475.   In that case we held that section 213 permitted combining permanent impairment from a preexisting work injury with permanent impairment from the work injury at issue when the subsequent work injury aggravated or accelerated the preexisting work injury.   *Id.* ¶ 14, 742 A.2d at 479.   The facts of the case, and therefore its holding, are limited to including permanent impairment from work injuries when the subsequent work injury aggravates or accelerates the earlier injury.   *Id.* ¶¶ 2, 14, 742 A.2d at 476, 479.   However, as became apparent in *Kotch,* our reasoning in *Churchill* could be read broadly to allow stacking of permanent impairment from two or more unrelated work injuries, as well as that from a prior work injury aggravated by the current work injury. *See id.* ¶ 12, 742 A.2d at 479.

[¶ 13]   The legislative debates on L.D. 2202 reflect that some members were concerned that merely repealing *Kotch,* without doing more, would not address the gray area between *Churchill* and *Kotch,* and in effect, would expand section 213's coverage to include permanent impairment from multiple unrelated work injuries, instead of merely excluding nonwork-related impairment, and would result in increased costs to the system.   *See, e.g.,* 3 Legis. Rec. S–2037–40, 2057, 2088 (2d Reg.Sess. 2002); 3 Legis. Rec. H–2177, 2223, 2172–74 (2d Reg.Sess.2002).   After considerable discussion and several proposed amendments, Sen. Amend. C to L.D. 2202, No.

S–623 (120th Legis. 2002), which ultimately passed, was introduced. It allowed permanent impairment from two compensable, unrelated work injuries to be combined prospectively, from 2002 forward, so that underwriting could account for what was perceived to be an expansion of employer liability for extended partial benefits to those employees suffering multiple unrelated work injuries when their combined permanent impairment exceeds the threshold. *See* 3 Legis. Rec. S–2091–93, H–2272–73; *see also id.* at S–2037–43 (discussing Sen. Amend. A to L.D. 2202, No. S–609, which introduced prospective application from 2004, but did not pass), H–2223–24 (same). Accordingly, section 213(1–A)(B) allows permanent impairment from two unrelated compensable work injuries occurring after January 1, 2002, to be combined. Section 213(1–A)(A) provides that impairment from multiple work injuries occurring before 2002 may be combined only if the work injury at issue aggravates or accelerates the preexisting condition.

E. Analysis

[¶ 14] S.D. Warren asserts that because the hearing officer found that the permanent impairment from Buckley's pre–2002 right shoulder injuries did not aggravate or accelerate the permanent impairment from his earlier left shoulder injuries, the Court should affirm the determination that the impairment levels assigned to each shoulder should not be stacked pursuant to section 213(1–A)(A). We disagree.

[¶ 15] The work injuries at issue in this case, although they occurred at different times, are not unrelated. The pertinent language in paragraph 1 of section 213 is: "Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board … *resulting from the personal injury* is in excess of [11.8%] to the body." (Emphasis added.) Paragraph (1–A)(A) provides that permanent impairment includes "permanent impairment resulting from … the work injury at issue in the determination." Although designated as a separate injury, the hearing officer found that the 2000 injury to the right shoulder, and thus the permanent impairment to the right shoulder, was due to Buckley's attempts to favor the shoulder injured in 1996, and thus was caused by the 1996 injuries to the left shoulder. Because the impairment from the 2000 right shoulder injury "result[ed] from" the 1996 left shoulder injuries, and the 1996 work injuries are "personal injur[ies]" referred to in subsection (1–A) and "work injur[ies] at issue in the determination" referred to in subsection (1–A)(A), it follows that permanent impairment to both shoulders should be combined when deciding whether the threshold has been reached. *See* 39–A M.R.S. §§ 213(1), (1–A). Both shoulder injuries are part of the "work injury at issue in the determination." *See id.* § 213(1–A)(A). Thus, we are not addressing multiple unrelated work injuries.

[¶ 16] From the plain meaning of section 213(1–A), it is apparent that the Legislature did not intend to prohibit combining impairment percentages from multiple work injuries where the impairment from later injuries resulted from impairment from earlier work injuries.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated in part and the case remanded for proceedings consistent with this opinion.