2012 ME 112

William BUCKLEY

v.

S.D. WARREN CO. et al.

Supreme Judicial Court of Maine.

Argued: April 13, 2012.

Decided: Aug. 7, 2012.

Revised: Sept. 25, 2012.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., and David E. Hirtle,

Esq., MacAdam Jury, P.A., Portland, for appellant William Buckley.

Richard D. Tucker, Esq. (orally), Tucker Law Group, Bangor, for appellees S.D. Warren Company and Constitution State Service Co.

Thomas E. Getchell, Esq. (orally), Troubh Heisler, Portland, for appellees S.D. Warren Company and CCMSI.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, AND GORMAN, JJ.

Dissent: SILVER and JABAR, JJ.

MEAD, J.

[¶ 1] William Buckley appeals from a decision of a Workers' Compensation Board hearing officer on remand after our decision in *Buckley v. S.D. Warren Co.*, 2010 ME 53, 997 A.2d 747 ("*Buckley I* ").* Buckley contends that, when determining whether his permanent impairment level is above the threshold for receiving partial incapacity benefits for the duration of his incapacity, the hearing officer (*Collier, HO* ) misinterpreted our mandate by failing to combine or "stack" the percentages of permanent impairment attributable to all of his work injuries. *See* 39–A M.R.S. § 213(1–A)(A) (2011).[1] Buckley also asserts that the hearing officer's finding that

he suffered 0% permanent impairment from a 2001 injury is inconsistent with a finding in the prior decree that he suffered 7% permanent impairment for that injury. We affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Because we set forth the facts and procedural background of this case in *Buckley I*, we restate them here only briefly. William Buckley worked for S.D. Warren from 1981 until 2002, and suffered four work-related injuries that are relevant here: (1) an injury in October 1996 to his left shoulder, (2) an injury in November 1996 to his left shoulder, (3) an injury in March 2000 to his right shoulder, and (4) an injury in October 2001 to both shoulders.

[¶ 3] In a 2005 decree addressing all but the 2000 injury, the hearing officer (*Sprague, HO* ) awarded Buckley 100% partial incapacity benefits for the October 1996, November 1996, and October 2001 injuries. Subsequently, S.D. Warren filed petitions (1) to establish the March 2000 right shoulder injury as compensable under the Act, (2) for apportionment, and (3) to determine the extent of permanent impairment. S.D. Warren contended that for each injury, Buckley's permanent impairment level did not exceed the applicable threshold for duration-of-disability benefits and therefore the partial benefits awarded for each injury are subject to the time

---

* Following the August 7, 2012 certification of the decision in this case, *William Buckley v. S.D. Warren Co., et al.*, 2012 ME 104, William Buckley moved for reconsideration requesting, *inter alia*, that the reference to his permanent impairment threshold be corrected to 11.8%. Upon review by the panel that decided the original appeal, and with the agreement of opposing parties, the motion was granted in part, and this opinion is reissued noting the permanent impairment threshold for Mr. Buckley's injuries is 11.8% rather

than 13.4% as referenced in the original opinion. The opinion is otherwise unchanged.

1. The Workers' Compensation Act, 39–A M.R.S. §§ 101–909 (2011), including 39–A M.R.S. § 213 (2011), has been substantially amended since the hearing officer issued the decree in this case. P.L. 2011, ch. 647 (effective in part Aug. 30, 2012, and in part Jan. 1, 2013).

limit set forth in 39–A M.R.S. § 213(1) (2011).

[¶ 4] In a 2008 decree, the hearing officer (*Collier, HO* ) granted the petition to establish the 2000 injury, finding that Buckley's right shoulder problems resulted from his favoring the left arm due to the prior left shoulder injuries. The hearing officer also apportioned responsibility for Buckley's ongoing incapacity equally among the four shoulder injuries.

[¶ 5] The hearing officer further determined in 2008 that Buckley suffers 7% permanent impairment in total to the left shoulder resulting from the two 1996 injuries, and 7% permanent impairment to the right shoulder resulting from the and 2001 injuries, with no additional impairment to the left shoulder from the 2001 injury. The hearing officer did not "stack" the impairment percentages pursuant to 39–A M.R.S. § 213(1–A)(A) because he found that (1) the 2000 right shoulder injury did not cause any additional permanent impairment to the left shoulder, and (2) "there is no evidence that the subsequent bilateral shoulder injury in 2001 caused any additional permanent impairment or in any other way aggravated or accelerated the prior injuries to either shoulder." Thus, the hearing officer concluded that Buckley's permanent impairment level fell below the threshold for duration-of-disability benefits, and his partial benefit payments for all four injuries would be subject to the cap. *See* 39–A M.R.S. § 213(1).

[¶ 6] We granted Buckley's petition for appellate review from the 2008 decree and issued a decision on June 24, 2010. We vacated the hearing officer's decision in part, holding that the permanent impairment from the various work injuries could potentially be stacked because, pursuant to section 213(1) and (1–A), Buckley's permanent impairment to the left and right shoulders was "not unrelated," and all of the permanent impairment resulted from injuries "at issue in the determination." *Buckley I*, 2010 ME 53, ¶¶ 14–16, 997 A.2d 747 (quotation marks omitted). We remanded the case for proceedings consistent with our opinion.

[¶ 7] On remand, the hearing officer assigned percentages of permanent impairment attributable to each injury as follows: 14% to each of the 1996 shoulder injuries, 7% to the 2000 right shoulder injury, and 0% to the 2001 bilateral shoulder injury. Pursuant to this decision, the employer will be relieved from paying benefits for the 2000 right shoulder and 2001 bilateral shoulder injuries, apportioned at 25% of the benefit each, after it has paid the statutory maximum number of partial benefit payments for each of those injuries, but must continue to pay benefits for both 1996 left shoulder injuries for the duration of the disability. *See Miller v. Spinnaker Coating*, 2011 ME 79, ¶ 11, 25 A.3d 954 (holding that the most recent insurer in a multiple injury case may reduce benefit payment by amount attributable to the injury for which the durational limit has been reached).

[¶ 8] The hearing officer denied Buckley's motion for additional findings of fact and conclusions of law. Buckley filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322(3) (2011) and M.R.App. P. 23(c).

## II. DISCUSSION

[¶ 9] Buckley agrees that the hearing officer correctly stacked the permanent impairment from the 2000 right shoulder injury onto the two 1996 left shoulder injuries to assign a 14% permanent impairment rating to each of the left shoulder injuries. However, he contends, pursuant to 39–A M.R.S. § 213(1–A)(A) and our mandate in *Buckley I*, that the 7% perma-

nent impairment rating from the two 1996 left shoulder injuries should be stacked onto the 7% rating assigned to the 2000 right shoulder injury and a 7% permanent impairment rating for the 2001 bilateral shoulder injuries,[2] so that the permanent impairment level for each of the four injuries would be 14%. Pursuant to this scenario, Buckley would receive partial benefits for all four of his injuries for the duration of his work-related partial disability.

A. Title 39–A M.R.S. § 213(1–A)

[¶ 10] Our inquiry once again involves construction of 39–A M.R.S. § 213, which provides in relevant part:

1. **Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211. *Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both....*

**1–A. Determination of permanent impairment.** For purposes of this section, *"permanent impairment" includes only permanent impairment resulting from:*

A. *The work injury at issue in the determination and any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination; or*

B. For dates of injury on or after January 1, 2002, the work injury at issue in the determination and:

(1) Any prior injury that arose out of and in the course of employment for which a report of injury was completed pursuant to section 303 and the employee received a benefit or compensation under this Title, which has not been denied by the board, and that combines with the work injury at issue in the determination to contribute to the employee's incapacity, except that a prior injury that was the subject of a lump-sum settlement approved pursuant to section 352 that had a finding of permanent impairment equal to or in excess of the then applicable permanent impairment threshold may not be included; or

(2) Any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination.

*Except as set forth in this subsection, "permanent impairment" does not include a condition that is not caused, aggravated or accelerated by the work injury.*

(Emphasis added.)

[¶ 11] Section 213 governs partial incapacity benefits and the length of time an

2. The hearing officer assigned 0% permanent impairment to the 2001 injury. Buckley is arguing that this is an erroneous reading of

the 2008 decree. He contends that in the 2008 decree, the hearing officer assigned 7% permanent impairment to the 2001 injury.

injured employee may receive those benefits, depending on the extent to which the employee has been permanently impaired by his injuries. Pursuant to section 213, if the permanent impairment attributable to the work injuries exceeds the threshold percentage established by Workers' Compensation Board Rules, the employee may receive partial benefits for the duration of his disability. 39–A M.R.S. § 213(1); Me. W.C.B. Rule, ch. 2, § 1. If it is lower than the threshold percentage, the employee may receive benefits for the statutory maximum number of weeks. 39–A M.R.S. § 213(1).

■ [¶ 12] If an employee suffers a single, partially-incapacitating injury, the inquiry is simple; it involves merely assessing whether the percentage assigned to that injury is above or below the current threshold. The inquiry becomes more complicated when the employee has suffered multiple work injuries.

■ [¶ 13] In the case of multiple injuries, the hearing officer assigns a separate date of injury to each injury, and payments attributable to different injuries may begin at different times. *See, e.g. Jensen v. S.D. Warren Co.*, 2009 ME 35, ¶ 13, 968 A.2d 528. Similarly, the hearing officer must assign a separate percentage of permanent impairment to each injury because, in multiple injury cases involving partial incapacity, an employer may reduce the partial benefit payment by the amount attributable to each respective injury after the employer has paid the statutory maximum number of benefit payments for that

injury. *Miller,* 2011 ME 79, ¶ 11, 25 A.3d 954; *see also Cust v. Univ. of Me.,* 2001 ME 29, ¶ 15, 766 A.2d 566. Take, for example, the case of an employee who suffers a partially incapacitating injury to her right ankle in 1998, for which the employer begins making benefit payments right away. If that same employee suffers a second, unrelated partially incapacitating injury to her left arm in 2000, and only 10% permanent impairment is assigned to each injury, the portion of the benefit payment attributable to the 1998 injury would time out first. The employer would continue to pay the portion attributable to the second injury until that injury expires in turn.

[¶ 14] The inquiry becomes still more complicated when the employee suffers multiple partially incapacitating injuries and one injury aggravates or accelerates another, or, as in Buckley's case, the injuries are related. In those cases, permanent impairment levels for each injury may be stacked or combined as section 213(1–A) allows, for the purpose of determining whether the permanent impairment for each injury exceeds the threshold.

[¶ 15] Buckley, whose work injuries occurred in 1996, 2000, and 2001, is entitled to receive partial benefits for the duration of his disability for any injury for which he suffers greater than the threshold level of 11.8% permanent impairment. 39–A M.R.S. § 213(1), (2); Me. W.C.B. Rule, ch. 2, § 1(1).[3] If the permanent impairment

---

3. Me. W.C.B. Rule, ch. 2, § 1(1) provides: "The permanent impairment threshold referenced in 39–A M.R.S.A. §§ 213(1) and (2) shall be reduced from 'in excess of 15%' to 11.8% or greater effective January 1, 1998. This adjustment is based on an independent actuarial review performed by Advanced Risk Management Techniques, Inc."

The Board increased the permanent impairment threshold for cases with dates of injury between 2002 and 2004 to 13.2%, and for cases with dates of injury after January 1, 2004, to 13.4%. Me. W.C.B. Rule, ch. 2, § 1(2), (3) (effective March 11, 2006), then decreased the threshold to 11.8% for dates of injury after January 1, 2006. Me. W.C.B. Rule, ch. 2, § 1(4) (amended June 17, 2008).

level for any injury is below that threshold, he is limited to the maximum number of weekly benefit payments established by statute and rule, which at present is 520 weeks, for that injury.[4] 39-A M.R.S. § 213(1); Me. W.C.B. Rule, ch. 2, § 2(9).[5]

## B. *Buckley I*

■ [¶ 16] Because Buckley's injuries occurred before January 1, 2002, subsection 213(1–A)(A) applies when determining whether the permanent impairment percentages from different work injuries may be combined. *Buckley I*, 2010 ME 53, ¶ 10, 997 A.2d 747. In *Buckley I*, we extensively reviewed the legislative history of section 213(1–A), noting that it was added to the statute in 2002 after our decision in *Kotch v. American Protective Services, Inc.*, 2002 ME 19, 788 A.2d 582. 2010 ME 53, ¶ 10, 997 A.2d 747; *see also* P.L. 2001, ch. 712, § 2 (effective July 25, 2002).[6] In *Kotch*, we had held that it was permissible to include permanent impairment from preexisting, nonwork injuries that had merely combined with work-related permanent impairment for purposes of applying the durational limit in section 213. 2002 ME 19, ¶¶ 10, 14, 15, 788 A.2d 582. We observed in *Buckley I* that although the 2002 amendment was apparently intended to limit *Kotch* and thereby limit

duration of disability payments for non-work-related permanent impairment, its effect was broader; it also limited the combination of impairment from separate *work-related* injuries. 2010 ME 53, ¶ 13, 997 A.2d 747. "Section 213(1–A)(A) provides that impairment from multiple work injuries occurring before 2002 may be combined only if the work injury at issue aggravates or accelerates the preexisting condition." *Id.* As we indicated in *Buckley I*, however, section 213(1–A)(A) does not require that permanent impairment from multiple work injuries to different body parts *always* be assessed separately. *See* 2010 ME 53, ¶¶ 14–16, 997 A.2d 747.

[¶ 17] The hearing officer in *Buckley I* construed the language in section 213(1–A)(A) to authorize stacking of permanent impairment (1) only from later injuries onto earlier injuries, and (2) only when the later injuries aggravate or accelerate the earlier injuries. *See Buckley I*, 2010 ME 53, ¶ 4, 997 A.2d 747. We vacated that decision, reasoning that when the Legislature amended section 213, it did not intend to prohibit stacking of permanent impairment from related injuries that are "personal injuries" resulting from the injury and are therefore part of the "injury at issue in the determination." *Id.* ¶¶ 15–16.

The 11.8% rating was invalidated in *Maine State Chamber of Commerce v. Workers' Compensation Board*, Nos. CV–08–256 and CV–08–262, 2009 WL 3754138 (Kennebec Cty. Sup.Ct. Aug. 31, 2009). No rule has been promulgated to replace Rule, ch. 2, § 1(4), so the current threshold would appear to stand at 13.4%.

4. The Board has exercised its authority five times pursuant to section 213(4) to extend the 260-week limit by fifty-two weeks, such that at present, the durational limit for partial incapacity benefits for injured workers with permanent impairment ratings of less than the threshold percentage is 520 weeks. Me. W.C.B. Rule, ch. 2, § 2(2), (3), (7), (8), (9).

5. These restrictions are intended to result in 25% of workers' compensation cases involving permanent injury being eligible for duration-of-disability benefits, and 75% being subject to the durational cap. 39-A M.R.S. § 213(2). The permanent impairment threshold in section 213 reflects a legislative intent to preserve longer-term benefits for those employees who, although only partially incapacitated, suffer the most serious injuries. *Harvey v. H.C. Price Co.*, 2008 ME 161, ¶ 11, 957 A.2d 960.

6. The amendment was given retroactive application to pending cases and to injuries occurring on or after January 1, 1993. P.L. 2001, ch. 712, § 6.

Because the 2000 injury resulted from the 1996 injuries, the permanent impairment that resulted from the 2000 injury also resulted from the 1996 injuries; thus, we reasoned, the impairment from those injuries should be combined when determining whether the threshold has been reached. *Id.* Specifically, we stated:

> The work injuries at issue in this case, although they occurred at different times, are not unrelated. The pertinent language in paragraph 1 of section 213 is: "Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board ... *resulting from the personal injury* is in excess of 11.8% to the body." (Emphasis added.) Paragraph (1–A)(A) provides that permanent impairment includes "permanent impairment resulting from ... the work injury at issue in the determination." Although designated as a separate injury, the hearing officer found that the 2000 injury to the right shoulder, and thus the permanent impairment to the right shoulder, was due to Buckley's attempts to favor the shoulder injured in 1996, and thus was caused by the 1996 injuries to the left shoulder. Because the impairment from the 2000 right shoulder injury "result[ed] from" the 1996 left shoulder injuries, and the 1996 work injuries are "personal injur[ies]" referred to in subsection (1–A) and "work injur[ies] at issue in the determination" referred to in subsection (1–A)(A), it follows that permanent impairment to both shoulders should be combined when deciding whether the threshold has been reached. *See* 39–A M.R.S. §§ 213(1), (1–A). Both shoulder injuries are part of the "work injury at issue in the determination." *See id.* § 213(1–

A)(A). Thus, we are not addressing multiple unrelated work injuries.

*Id.* ¶ 15.

[¶ 18] We concluded pursuant to sections 213(1) and 213(1–A)(A) that "aggravation or acceleration" are not, in every case, the touchstones for determining when permanent impairment can be combined, and we remanded for the hearing officer to apply this construction to the facts at hand. *See id.* ¶ 16.

[¶ 19] On remand, although the hearing officer did stack the impairment from the 2000 right shoulder injury onto that from the 1996 left shoulder injuries, the hearing officer did not stack the impairment from the 1996 injuries forward onto the 2000 and 2001 injuries. He explained the decision as follows:

> [B]y emphasizing the language of permanent impairment "resulting from" the personal injury, the Law Court seems to have relied upon the relationship of causation. Causation flows in only one direction: forward rather than backward. The 2000 injury is causally connected to the 1996 injuries in that the 1996 injuries caused the 2000 injury, and not the other way around. Therefore, I conclude that the 1996 injury dates each resulted in 14% permanent impairment because they each caused the impairment to both shoulders, but the 2000 injury date resulted only in the 7% right shoulder impairment that it caused. I further conclude that the 2001 injury resulted in 0% permanent impairment because it did not cause any additional impairment to either shoulder, nor did it otherwise aggravate or accelerate the earlier injuries.

For the reasons that follow, we conclude that the hearing officer did not err.

 [¶ 20] First, the hearing officer correctly assigned a percentage of permanent impairment to each injury separately.

The hearing officer then concluded that when we determined that permanent impairment from separate work injuries that "result[ed] from the personal injury" could be stacked, we meant, and the statutory language means, that permanent impairment from a subsequent injury that was *caused by* a prior injury could be stacked onto impairment from the prior injury. The hearing officer proceeded to establish the permanent impairment level for each specific injury. He then combined impairment levels if he concluded that an injury resulted from, or was caused by, another injury.

[¶ 21] The hearing officer assigned 7% permanent impairment to each of the 1996 left shoulder injuries, and to the 2000 right shoulder injury. Concluding that the 2000 right shoulder injury resulted from the 1996 left shoulder injuries, the hearing officer stacked the 7% impairment from the 2000 injury onto the 7% impairment assigned to the 1996 injuries, and concluded that Buckley suffers 14% permanent impairment for each of the 1996 left shoulder injuries. Reasoning that causation can be prospective only, the hearing officer further concluded that the 1996 injuries did not result from the 2000 injury and therefore permanent impairment from the 1996 injuries could not be stacked onto that resulting from the 2000 injury. He therefore left the permanent impairment rating for the 2000 injury at 7%.

[¶ 22] The hearing officer's decision with respect to the 1996 and 2000 injuries is consistent with our mandate in *Buckley I*.

C. Permanent Impairment Rating for the 2001 Injury

█ [¶ 23] Buckley argues that the finding in the 2011 decree that he suffered 0% permanent impairment from the 2001 bilateral shoulder injury contradicts a finding in the 2008 decree that he suffered 7% permanent impairment from that injury. Buckley further argues that because the left shoulder was also injured in 2001, the permanent impairment should be combined with the 1996 impairment to the left shoulder, with a 14% rating assigned to the 2001 injury, because the multiple left shoulder injuries are related and therefore are part of the "injury at issue in the determination."

[¶ 24] In the 2008 decree, the hearing officer did not clearly parse out the percentages of permanent impairment to be assigned to each injury, but instead, allocated 7% to the left shoulder and 7% to the right shoulder. The hearing officer also made the following specific finding: "[T]he permanent impairment attributable to the 2000 and 2001 injuries is 7% to the right shoulder, with no additional permanent impairment to the left shoulder from these injuries." In the current, 2011 decree, the hearing officer stated: "I further conclude that the 2001 injury resulted in 0% permanent impairment, because it did not cause any additional permanent impairment to either shoulder, nor did it otherwise aggravate or accelerate the earlier injuries."

[¶ 25] The hearing officer's 2008 finding that "the permanent impairment attributable to the 2000 and 2001 injuries is 7% to the right shoulder, with no additional permanent impairment to the left shoulder from these injuries" is not necessarily inconsistent with the 2011 finding that 0% impairment is attributable to the 2001 injury. The 2008 finding can be construed to mean that all of the impairment to the right shoulder was caused by the 2000 injury, and no impairment to the left shoulder was caused by the 2001 injury.

The entry is:

The Workers' Compensation Board hearing officer's decision is affirmed.

JABAR, J., with whom SILVER, J. joins, dissenting.

[¶ 26] I respectfully dissent. I do not believe that the hearing officer's decision is consistent with our mandate in *Buckley v. S.D. Warren Co.*, 2010 ME 53, 997 A.2d 747 (*"Buckley I"*). In that decision we held:

> Because the impairment from the 2000 right shoulder injury "result[ed] from" the 1996 left shoulder injuries, and the 1996 work injuries are "personal injur[ies]" referred to in subsection (1–A) and "work injur[ies] at issue in the determination" referred to in subsection (1–A)(A), it follows that permanent impairment to both shoulders should be combined when deciding whether the threshold has been reached.

*Id.* ¶ 15 (alterations in original).

[¶ 27] We stated that it was apparent from the plain meaning of 39–A M.R.S. § 213(1–A) (2011) that the Legislature intended to allow "combining impairment percentages from multiple work injuries where the impairment from later injuries resulted from impairment from earlier work injuries." *Buckley I*, 2010 ME 53, ¶ 16, 997 A.2d 747. *Buckley I* turned on our determination that in enacting section 213, the Legislature was overriding *Kotch v. American Protective Services, Inc.*, 2002 ME 19, 788 A.2d 582, in which we allowed work injuries to be combined with unrelated work and nonwork injuries in determining benefits under section 213. *Buckley I*, 2010 ME 53, ¶¶ 10–11, 997 A.2d 747. The facts here involve prior *related* work injuries.

[¶ 28] In *Buckley I* we said:

> The legislative debates on L.D. 2202 reflect that some members were concerned that merely repealing *Kotch*,

without doing more, would not address the gray area between *Churchill* [*v. Central Aroostook Ass'n for Retarded Citizens, Inc.*, 1999 ME 192, 742 A.2d 475] and *Kotch*, and in effect, would expand section 213's coverage to include permanent impairment from multiple *unrelated* work injuries, instead of merely excluding nonwork-related impairment. . . .

2010 ME 53, ¶ 13, 997 A.2d 747 (emphasis added).

[¶ 29] *Buckley I* discussed the legislative history of section 213 to determine its intent. We concluded that it was clear that section 213 was enacted to override *Kotch* and *Churchill* to ensure that prior nonwork and nonrelated work injuries are not part of a section 213 determination. Because we were dealing with prior *related* work injuries and the definition of "work injury at issue," it was not necessary to determine whether the prior injuries aggravated or accelerated the injury. Section 213(1–A)(A) indicates that permanent impairment includes impairment resulting from "[t]he work injury at issue in the determination and any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination." *Buckley I* held that prior work injuries that are related are in fact part of the "work injury at issue"; therefore, it is not necessary to consider whether there was any aggravation or acceleration.

[¶ 30] We explicitly instructed the hearing officer "that permanent impairment to both shoulders should be combined when deciding whether the threshold has been reached." *Buckley I*, 2010 ME 53, ¶ 15, 997 A.2d 747. This language makes it very clear that the holding in *Buckley I* mandated that the hearing officer combine the permanent impairment

percentages for the two 1996 injuries with the 2000 injury for purposes of determining whether the employee was entitled to extended benefits pursuant to section 213 for the 2000 injury.

[¶ 31] This is not what the hearing officer did on remand. He did not combine the permanent impairment percentages from the 1996 injuries with the 2000 injury. Instead he reached backward and stacked the 2000 permanent impairment percentage onto the 1996 injuries. The hearing officer justified the stacking by stating: "[T]he Law Court seems to have relied upon the relationship of causation. Causation flows in only one direction: forward rather than backward. The 2000 injury is causally connected to the 1996 injuries in that the 1996 injuries caused the 2000 injury, and not the other way around." This is not what we said in *Buckley I*. We held that the injuries were related; we did not discuss the concept of causation. We definitively said that permanent impairment to both shoulders should be combined when deciding whether the threshold has been reached. *See* 39–A M.R.S. 213(1)(1–A). We held that both shoulder injuries were part of the "work injury at issue in the determination." *Buckley I*, 2010 ME 53, ¶ 15, 997 A.2d 747 (quotation marks omitted). The essence of *Buckley I* is that because Buckley's 2000 injury resulted from the two 1996 prior work related injuries, they were related; therefore, the permanent impairment percentages should be combined because they are part of the "work injury at issue."

[¶ 32] For purposes of section 213, the hearing officer should have combined the 7% permanent impairment to the left shoulder resulting from the two 1996 injuries with the 7% permanent impairment to the right shoulder resulting from the 2000 injury for a total of 14% total permanent impairment for the 2000 injury.

[¶ 33] I also believe that the hearing officer failed to make the proper determination regarding the 2001 injury. In *Buckley I*, we clearly indicated that the 1996 shoulder injuries and the 2000 shoulder injury were related, but we did not address any determination regarding the 2001 bilateral shoulder injury. The hearing officer did not make any findings as to whether the 2001 injury was "related" to the prior work injuries. The hearing officer did make findings that the 2001 injury did not aggravate or accelerate any preexisting physical condition or injury. He also found that no permanent impairment resulted from the 2001 injury. However, he did not make any findings as to whether the 2001 injury was related to the prior work related injuries. There is a great deal of evidence pointing in this direction because the 2001 injury involved an injury to the same shoulders that were involved in the 1996 and 2000 injuries. In the April 13, 2005, decision, the hearing officer stated:

> The undersigned further finds that the employee continues to remain affected by these three dates of injury[, October 30, 1996, November 7, 1996, and October 16, 2001]. The Board now must apportion between those dates of injury. When Dr. Hanley was asked to identify the respective roles played by the 1996 injuries, his most honest answer was "it would really be a guess." However, he indicated that both of the 1996 injuries were playing a significant role and that either injury could have caused the rotator cuff tear. In addition, Dr. Phillips does place a significant amount of responsibility on the October 16, 2001 injury. The most anybody can say in this particular instance is that all three injuries are playing a significant role in the employee's ongoing incapacity.

Additionally, in the December 19, 2008, decision, the hearing officer found that "all four injuries continue to contribute to Mr. Buckley's ongoing incapacity."

[¶ 34] The case should be remanded and the hearing officer directed to determine whether the prior 1996 left shoulder injuries and/or the 2000 right shoulder injury are related to the 2001 injury to both shoulders. If he finds that they are related, then the "work injury at issue" for the 2001 injury for purposes of a section 213(1–A) determination is the combination of the related prior work injuries.

[¶ 35] I believe that we should remand this matter to the hearing officer to make the proper determinations consistent with *Buckley I*.